NORTON et al. v. COLUSA PARROT MINING & SMELTING CO. et al.

(Circuit Court, D. Montana. October 12, 1908.)

No. 262.

1. WATERS AND WATER COURSES (§ 75*)—POLLUTION OF STREAM—INJUNCTION—PARTIES.

Where several persons who own several interests in property suffer injury of like character from the illegal pollution of the stream from which all take water, they may unite in a suit in equity to obtain an abatement of the nuisance.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 66; Dec. Dig. § 75.*

Pollution of water courses, see note to Travis Placer Mining Co. v. Mills, 37 C. C. A. 538.]

2. NUISANCE (§ 30*)—ABATEMENT—INJUNCTION—DEFENDANTS.

Where several persons are alleged to have contributed and are continuing to contribute to the same nuisance on account of which plaintiffs suffer, all such contributing persons may be joined as defendants in a suit to restrain the continuance thereof.

[Ed. Note.—For other cases, see Nuisance, Dec. Dig. § 30.*]

3. WATERS AND WATER COURSES (§ 75*)—POLLUTION—INJUNCTION—DAMAGES.

In a suit in federal courts by several riparian proprietors to enjoin the pollution of the stream as a nuisance, complainants could not in addition recover damages for past injury to their land, having a complete and adequate remedy at law therefor.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 75.*

Restraining pollution of water courses, see note to Travis Placer Mining Co. v. Mills, 37 C. C. A. 544.]

In Equity. On demurrer to bill.

Complainants, owners in severalty of divers parcels of farming land, together with the water rights belonging thereto, seek to enjoin the defendants, engaged in the operation of smelting plants for the treatment and reduction of ores, from impregnating, polluting, and poisoning the waters of certain tributaries of the Deer Lodge river, from which stream complainants obtain water for the irrigation of their farms and for domestic purposes. In their bill, complainants also pray for damages for injury alleged to have been done to their lands in the past by the pollution of the water of the stream as a consequence of the smelter operations of the defendants.

Separate demurrers to the bill were interposed by each of the three defendant companies on the following grounds among others: (1) That there is a misjoinder of parties complainant, in that the interests of the respective complainants are separate and independent, and not common or joint. (2) That there is a misjoinder of parties defendant, in that the acts alleged to have been committed by the defendants were not committed, or claimed to

have been committed, in common or jointly by the defendants, but were separate and independent acts committed by each defendant. (3) That the said bill is multifarious, in that it attempts to unite legal and equitable causes of action.

John A. Shelton and T. J. Walsh, for complainants.

W. M. Bickford & Geo. F. Shelton for defendant Colusa Parrot Mining & Smelting Co.

C. F. Kelley and Forbis & Evans, for defendants Colorado Smelting & Mining Co. and Butte & Boston Consol. Mining Co.

HUNT, District Judge (after stating the facts as above). After study of the questions presented by defendants' demurrers, my opinion is that the principles which must control are these: Where several persons who own several interests in property suffer injury of like character from one and the same nuisance, say the illegal polluting of a stream from which all take water, they may unite in an action in equity. Such persons have a community interest in obtaining the abatement of the alleged nuisance. In the many well-considered opinions upon the subject, I find the doctrine succinctly stated by Justice Pigott in Beach v. Spokane R. & W. Co., 25 Mont. 379, 65 Pac. 111. Further, it is an established rule of equity that where several persons are alleged to have contributed, and are continuing to contribute, to the same general nuisance, on account of which complainants suffer, all such contributing persons may be joined as defendants. The clear reasoning of Judge Sawyer in the Debris Case (C. C.) 16 Fed. 25, satisfies me that this rule is sound and just. See, also, Story's Equity Practice, § 271, note. From these views it follows that these several complainants can properly unite in a suit against the several defendants to abate the nuisance which they allege exists, and, in so far as they have done so, their bill states ground for equitable relief.

But, in their same bill, they also ask for damages for past injury done by the past maintenance of the nuisance, and thus have proceeded upon the theory that in the federal courts, where one sues to enjoin the maintenance of a nuisance, for example, polluting a stream so as to injure the lands of farmers below the point of pollution, he may, in the same suit in equity, also recover damages for the past injury done to his land. As this contention is vigorously challenged by the several defendants who have interposed separate demurrers, the court must needs decide a question which is of very high importance to the profession, and upon which there is neither a positive ruling by the Supreme Court of the United States, nor complete uniformity of view among the courts of England or among the courts or text-writers in America.

Undoubtedly, it has been held by many of the courts of the states that it is permissible in equity for the court exercising original jurisdiction to entertain a bill for the abatement of an alleged nuisance, and to go on and grant not only the relief of abating the nuisance, if proven to exist, and to be of a continuing nature, but also to award satisfaction for what has been done, or, in other words, to award damages. These decisions are, for the most part, placed upon the argu-

ment that there is but one cause of action—the nuisance—and that equity, in order to avoid a multiplicity of suits, will regard the award of damages as incidental, and so give two forms of relief, even though one kind is legal in character, to which the sufferer from the nuisance may be entitled. Yolo County v. Sacramento, 36 Cal. 193; Astill v. South Yuba Water Co., 146 Cal. 55, 79 Pac. 594. An elaborate discussion will be found in Pomeroy's Equity Jurisprudence, § 181 et seq.; Brickner, etc., Mills v. Henry, 73 Wis. 229, 40 N. W. 809; McCarthy v. Gaston Min. Co., 144 Cal. 542, 78 Pac. 7; Lynch v. Met. Railway Company, 129 N. Y. 274, 29 N. E. 315, 15 L. R. A. 287, 26 Am. St. Rep. 523; Henderson v. N. Y. C. Railroad Co., 78 N. Y. 425.

But after carefully considering the question and the various decisions, my judgment is that it is by no means accurate to say that recovery of damages in such actions for past injury done is merely or properly incidental to the abatement of the primary wrong, the maintenance of the nuisance. Damages for a past overflow seem to me wholly separate from the injunctive relief asked, and for them the law affords a perfectly plain and adequate remedy, in a different jurisdiction. This being so, the fundamental principle that if the remedy sought be a legal one, and is plain and complete, a jury is essential unless waived, controls. As was held in Basey v. Gallagher, 87 U. S. 670, 22 L. Ed. 452:

"The relief which the law affords must still be administered through the intervention of a jury, unless a jury be waived; the relief which equity affords must still be applied by the court itself, and all information presented to guide its action, whether obtained through masters' reports or findings of a jury, is merely advisory."

Distinctions prevail, as in suits where equity alone can grant relief, as where injunction to prevent a continuance of a wrong is sought, and an account of profits is asked. But in such cases, equity does not award compensation by assessing damages for the tort, but does require an account of profits, on the theory that if profits have been made, it is equitable that the wrongdoer should refund them. This doctrine is discussed in Root v. Railway Co., 105 U. S. 189, 26 L. Ed. 975, where the court reviews a number of the English cases, after premising its discussion by saying:

"Indeed, it is the settled doctrine of this court that this distinction of jurisdiction, between law and equity, is constitutional, to the extent to which the seventh amendment forbids any infringement of the right of trial by jury, as fixed by the common law."

And, again, says Justice Mathews:

"It is the fundamental characteristic and limit of the question of jurisdiction in equity that it cannot give relief when there is a plain and adequate and complete remedy at law; and hence it had no original, independent, and inherent power to afford redress for breaches of contract or torts by awarding damages, for to do that was the very office of proceedings at law."

In Andrews v. Brown, 3 Cush. (Mass.) 130, the Supreme Court of Massachusetts approves of Judge Story's opinion:

"That the jurisdiction for compensation or damages does not ordinarily attach in equity, except as ancillary to a specific performance, or to some other

relief, and that, if it does attach in any other cases, it must be under special circumstances and peculiar equities; as, for instance, in cases of fraud, or where the party has disabled himself by matter post facto from a specific performance."

Nor is the question of jurisdiction in our country affected by St. 21 & 22 Vict. c. 27, § 2, which is the act called the "Hugh Cairns Act," whereby the English Chancery Courts were expressly authorized to award damages when there is jurisdiction to entertain an application for an injunction against a breach of a covenant, contract, or agreement, or against the commission or continuance of any wrongful act, or for specific performance (Daniell's Ch. Pl. & Pr. § 1081; Bispham's Principles of Equity, § 477), for the question must find determination upon the authorities in the English High Courts of Chancery, as they existed prior to the adoption of the Constitution of the United States, and the precedents of the decisions of the Supreme Court of the United States.

In Scott v. Neely (decided in 1890) 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, the Supreme Court said:

"The sixteenth section of the judiciary act of September 24, 1789, 1 Stat. 82, enacted that such suits 'shall not be sustained in either of the courts of the United States, in any case where plain, adequate and complete remedy may be had at law'; and this prohibition is carried into the Revised Statutes. Section 723. It is declaratory of the rule obtaining and controlling in equity proceedings from the earliest period in England, and always in this country. And so it has been often adjudged that whenever, respecting any right violated, a court of law is competent to render a judgment affording a plain, adequate, and complete remedy, the party aggrieved must seek his remedy in such court, not only because the defendant has a constitutional right to a trial by jury, but because of the prohibition of the act of Congress to pursue his remedy in such cases in a court of equity. Hipp v. Babin, 19 How. 271, 278, 15 L. Ed. 633; Lewis v. Cocks, 23 Wall. 466, 470, 23 L. Ed. 70; Killian v. Ebbinghaus, 110 U. S. 568, 573, 4 Sup. Ct. 232, 28 L. Ed. 246; Buzard v. Houston, 119 U. S. 347, 351, 7 Sup. Ct. 249, 30 L. Ed. 451. All actions which seek to recover specific property, real or personal, with or without damages for its detention, or a money judgment for breach of a simple contract, or as damages for injury to person or property, are legal actions, and can be brought in the federal courts only on their law side. Demands of this kind do not lose their character as claims cognizable in the courts of the United States only on their law side, because in some state courts, by virtue of state legislation, equitable relief in aid of the demand at law may be sought in the same action. Such blending of remedies is not permissible in the courts of the United States."

In Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977, 37 L. Ed. 804, the court, through Chief Justice Fuller, said that in the practice of the courts of the United States the distinction between law and equity is "matter of substance, and not merely of form or procedure." It is to this matter of substance that these demurrers go.

One who reads the many utterances of the Justices of the Supreme Court of the United States, whether necessarily made in decision or in the elaboration of their views upon questions pertinent to questions being decided, must be impressed by the steady tenacity with which they uphold the right to a jury trial of common-law questions of fact, and the student can but observe how they cast out from equity suits issues of damages that belong purely to the common-law courts.

Walker v. New Mexico & S. P. R. Co., 165 U. S. 593, 17 Sup. Ct. 421, 41 L. Ed. 837; American Publishing Co. v. Fisher, 166 U. S. 464, 17 Sup. Ct. 618, 41 L. Ed. 1079.

Guided by the reasoning which convinces me that the question must be determined upon a fundamental principle of the defendants' constitutional right to a jury trial for damages, it follows from what has been said that the bill is multifarious. The separate demurrers will be sustained on this ground. Crane et al. v. Winsor et al., 2 Utah, 248; Enc. Plead. & Practice, vol. 10, p. 973; Story's Eq. Pl. & Pr. § 271; Mitford & Tyler's Pleading & Practice in Equity, pp. 271, 272. If complainants wish to amend, they may do so within 20 days.