# CHARLESTON.

ALCINDA C. McMECHEN et al. v. HITCHMAN-GLENDALE CON-
SOLIDATED COAL COMPANY et al.

Submitted April 26, 1921.   Decided May 10, 1921.

1. LANDLORD AND TENANT—*Landlord of Tenant Maintaining Nuis-
ance Consisting of Division of Stream Held Not Proper
Party to Injunction.*

    · An owner of land whose tenant or licensee, after entry on
it under his lease or license, maintains thereon a private
nuisance erected by himself, working injury and detriment
to an adjacent tract of land, as by altering the course of a
natural stream of water, so as to make it carry and dis-
charge its waters on and over such adjacent land, is not a
necessary nor proper party to a bill by the owner of the in-
jured land, to abate such nuisance by injunction, unless the
work or business authorized by the lease or license was
such in its nature and character as would necessarily con-
stitute the nuisance or work the injury complained of.   (p.
635).

2. TRUSTS—*Trustee Holding Legal Title Not Proper Party to Suit
to Enjoin Lessee or Licensee from Maintaining Nuisance.*

    Nor is a trustee holding the legal title to the land on which
the nuisance is maintained, for a party guilty of such wrong-
ful acts, a necessary or proper party to such a bill.   (p. 635).

3. WATERS AND WATER COURSES—*Parties Contributing to Nuis-
ance from Diversion of Water Proper Defendants in Suit
to Enjoin.*

    In such suit, all persons doing acts entering into or con-
tributing to the nuisance or injury, in such manner and to
such an extent as to amount to maintenance or creation
thereof, in whole or in part, within the legal meaning of the
terms, whether such acts be joint or separate, in either a
legal or practical sense, are proper parties defendant and
may be joined as such in the bill.   (p. 635).

4. EQUITY—*Bill to Enjoin Nuisance Not Multifarious Because
Praying Accounting and Damages.*

    Inclusion in such a bill of allegations of right of recovery
for the resulting damages and a prayer for an accounting
therefor does not render it multifarious, nor vitiate it in any
manner.   (p. 637).

5.  Nuisance—*Court Abating Nuisance May Assess Damages.*

A court of equity having jurisdiction in such case to abate the nuisance may assess, and enter a decree for, such damages, whether the defendants be jointly or separately liable therefor, taking care to decree them on the basis of the legal liability of the parties; but the jurisdiction so to do is merely incidental to the exercise of the jurisdiction to abate the nuisance. (p. 637).

6.  Appeal and Error—*On Review of Ruling on General Demurrer No Question Considered After Discovery of One Ground of Relief.*

If, upon a certificate bringing to this court for review, an interlocutory decree disposing of a general demurrer to a bill praying for a temporary injunction prohibitory in its operation and also for a mandatory injunction, by way of final decree, one ground of relief is discovered, the inquiry as to the sufficiency of the bill will not be extended further. To obtain a ruling, in such manner, as to the sufficiency of a particular part of a bill, or right to specific relief therein prayed for on facts alleged, it is necessary to demur particularly and separately to such part. (p. 637).

Case Certified from Circuit Court, Marshall County.

Suit by Alcinda C. McMechen and others against the Hitchman-Glendale Consolidated Coal Company and others, for an injunction.    Demurrers to bill provisionally sustaind, and case certified.

*Affirmed in part.    Reversed in part.*

*James W. Ewing* and *T. S. Riley*, for plaintiffs.

*Frank W. Nesbitt* and *A. L. Hooton*, for defendants.

Poffenbarger, Judge:

The question certified in this case pertains to the sufficiency of a bill in equity filed to obtain a temporary injunction restraining and inhibiting the defendants from doing certain acts by which a natural stream of water has been obstructed and turned out of its course and caused to discharge its waters on and over the lands of the plaintiffs, and, by way of final relief, a mandatory injunction requiring them to remove the refuse, cinders, slate and dirt they have already deposited in the stream, to such an extent as to turn it out

of its course and wash away land and cause deleterious deposits thereon.

After having awarded the temporary and prohibitive injunction sought, the court, being in some doubt as to the sufficiency of the bill, as indicated by its procedure, provisionally sustained demurrers thereto, certified its decision here for review and allowed the injunction to stand pending the decision of this court. Failure of the defendants to move for a dissolution of the injunction and of the court, to dismiss the bill signifies assent to the procedure on the part of the former, and a desire on the part of all to obtain an adjudication of the rights of the parties, on the pleadings, as far as it is practicable to do so.

The stream in question runs between lands of the plaintiffs and lands owned by the Real Estate and Improvement Company of Baltimore City, a corporation allied with or subservient to the Baltimore and Ohio Railroad Company. Across both tracts of land, as well as the stream, known as McMechen Run, the Baltimore and Ohio Railroad Company maintains and operates the main line of its railroad and makes deposits of materials in the stream, at or near the crossing thereof. At a point about 200 feet north of the crossing, the Hitchman-Glendale Consolidated Coal Company, another corporation, maintains a tipple, leading from the mouth of its mine on the hillside, over the railroad track and down onto the property of the Real Estate and Improvement Company of Baltimore City, and, in the course of its mining operations involving the use of the tipple, makes heavy deposits of refuse, slate, cinder and debris on the land, which go into the stream. From these two sources, the mining operations and railroad operation, sufficient deposits go into it practically to close it up and cause its waters to flow out of their natural course and over the lands of plaintiffs. Whether they are to any extent made at the same point is left in doubt by the allegations of the bill. The three corporations here mentioned were joined as defendants in the bill, and they filed separate demurrers thereto.

As to the Real Estate and Improvement Company of Bal-

timore City, on whose lands it is alleged the other two defendants conduct business or perform acts working injury to the complainants, the allegations of the bill are entirely too narrow. An owner of property is not liable for a nuisance maintained thereon by a tenant or licensee, unless he erected the nuisance and then leased the land, or leased or let it for the conduct of a business thereon, which, in its very nature, would work injury to a third person. If he leases or lets it for a purpose which may or may not work such injury, according to the way in which the enterprise is conducted or the purpose executed, he is not liable; but the tenant is, if the business is conducted or the work done in a negligent way, and injury results. *Fish* v. *Dodge,* 4 Denio, (N. Y.), 311; *Pickard* v. *Collins,* 23 Barb. (N. Y.), 444; *Rich* v. *Basterfield,* 4 C. B. 805; *Brown* v. *Russell,* L. R., 3 Q. B. 251; Wood, Nuisances, p. 100; Joyce, Nuisances, sec. 461; 20 R. C. L. Tit. Nuisances, sec. 14, p. 291; 29 Cyc. 1203; 20 R. C. L. Tit. Nuisances, sec. 18 p. 396. The bill alleges no more against the owner of the real estate than that it permitted, licensed and consented to the maintenance and operation of the coal tipple by the coal company, over and upon its lands, and the hauling of certain refuse, consisting of stone, slate and dirt over the same in the coal company's mine cars, and the dumping of the same upon its lands, and that the railroad company, from time to time, caused to be dumped, deposited and thrown upon said lands, as well as upon its own right of way; large quantities of cinder, refuse and dirt. There is a further allegation that the real estate company owns and holds the land for the benefit of the railroad company. Obviously, these charges are altogether insufficient, under the principles or rules above stated, to show a cause of action of any kind against the real estate company, wherefore its demurrer should have been sustained upon the ground that it is neither a necessary nor proper party to the cause. There is no suggestion of necessary or even probable injury to the stream, as an incident of careful and proper operation of the mine and tippel and the railroad. Nor is it intimated that the land company constructed either the tipple

or the railroad. Even though the railroad company has full equitable title to the land, as is alleged, it is not liable in the capacity of owner; nor is its trustee.

Separate liability of the railroad and coal companies is not seriously denied, if denied at all, but the doctrine of multifariousness is invoked on account of their joinder as defendants. Being clearly of opinion that they are properly joined, we enter upon no inquiry as to whether misjoinder would have brought the bill within that doctrine and wholly defeated it. In view of our conclusion, the question is purely academic and a decision thereof would be a mere *obiter dictum.*

In only one respect does the cause of action set up in this bill resemble the one involved in *Farley* v. *Crystal Coal & Coke Company et al.,* 85 W. Va. 595. In addition to relief by injunction, it seeks an accounting for the damages resulting from the wrongful acts. Omission of that would have left a good cause of action in equity, under the acknowledged jurisdiction of its courts to abate nuisances. If the claim for damages is not cognizable in equity, for any reason disclosed by the bill, inclusion thereof does not make the bill multifarious. *Sprinkle* v. *Duty,* 54 W. Va. 559; *County Court of Harrison County* v. *Hope Natural Gas Co.,* 80 W. Va. 486. If inclusion thereof was permissible, on the theory of power and authority in a court of equity having jurisdiction of a controversy or matter for one purpose, to take entire cognizance thereof and do complete justice between the parties, it manifestly does not render the bill multifarious. Right of recovery of damages is not the basic cause of action set up. It is a merely incidental or resultant matter over which the court, having jurisdiction for other purposes, extends its powers. Without jurisdiction upon some other grounds, this cause of action would not give access to a court of equity at all. *Freer* v. *Davis,* 52 W. Va. 1. Hence, it is logical to say its inclusion in the bill has no important bearing upon the present inquiry.

The distinction between abatement of nuisances and recovery of damages for injuries occasioned by wrongful acts, constituting nuisances, considered as grounds of action, is so

apparent and so vast, that it is not at all surprising to find well defined and broad differentiation as to parties. They belong to different forums, the former being cognizable only in equity, and the latter in the law courts. The limitation as to forms and methods of relief obtained by legal remedies and the extent of such relief, which does not obtain in courts of equity, constitutes in large measure the basis of differentiation. The limitation upon legal remedies and the liberality and flexibility of equitable remedies is so well known that it is useless to consume time and space in an effort to demonstrate them. Upon the state of facts here disclosed, the law courts could only give damages for the wrong and, if the defendants are not jointly liable, they could not be jointly sued at law. *Farley* v. *Crystal Coal & Coke Co.*, cited. Their creation or maintenance of nuisances, or both, is an entirely different thing. As to that, they could be sued in equity before any damage had occurred. They could be enjoined by way of prevention of the contemplated injury. Although brought into existence or maintained by the separate acts of a number of persons, a nuisance, considered in all of its aspects and elements, may be an entire thing. Limited in its functions to a mere matter of compensation for damages, a court of law could not, under all circumstances, treat it as an entirety, but a court of equity can do so, because of its more extensive remedial powers.

Without further discussion of the matter, it suffices to say the authorities uniformly recognize and uphold jurisdiction in courts of equity to enjoin, in one suit, all who participate in the diversion of the waters of a stream, or pollution thereof, in violation of the legal rights of a riparian owner, whether they do it by joint or separate acts. *Draper* v. *Brown*, 115 Wis. 361; *Lockwood Company* v. *Lawrence et al.*, 77 Me. 297; *People* v. *Gold Run Ditch & Mining Co.*, 66 Cal. 138; *Hillman* v. *Newington*, 57 Cal. 56. The same rule obtains in all other instances of private nuisances, and extends to parties plaintiff as well as parties defendant. *Grand Rapids W. P. Co.* v. *Bensley*, 75 Wis. 399; *Putnam* v. *Sweet*, 2 Pin. 302; *Younkin* v. *Milwaukee L., H. & T. Co.*, 112 Wis. 15; *Blaisdell* v. *Stephens*, 14 Nev. 17; *Thorpe* v. *Brumfitt*,

8 Ch. App. 650; Story's Eq. Plead., secs. 271 to 278a; Wood, Nuisances, p. 212, sec. 168, p. 1164, sec. 795.   It is no doubt true, that only such persons as are liable for damages can be joined in a suit for an injunction against a nuisance, but it does not follow that all must be jointly liable therefor.

It is well established, that equity, having taken jurisdiction to abate a nuisance, may in the same suit assess and decree the resulting damages. *Bassett* v. *Salisbury Mfg. Company,* 43 N. H. 249; *Dennett* v. *Dennett,* 43 N. H. 499; Wood, Nuisances, p. 1160, sec. 792.   Its diverse remedies enable it to award damages either jointly or separately, according to the legal liability.   Hence, on the question of jurisdiction, it is immaterial whether the deposits complained of were made at exactly the same place or not.

As the demurrers go to the whole bill and are not limited to specific and defined parts thereof, or to particular relief prayed for, and the bill is good for some purposes, our inquiry will not be extended further.   To obtain a ruling upon the prayer for a mandatory injunction, it was necessary to demur separately to so much of the bill and its prayer as sought that particular relief. *City of Wheeling* v. *Chesapeake & Potomac Telephone Co.,* 82 W. Va. 208.

An order will be entered, recording our conclusion that the demurrer of the Real Estate and Improvement Company of Baltimore City was properly sustained and those of the other two defendants improperly sustained, and certified to the court below.

*Affirmed in part.   Reversed in part.*