ADOLPH BRCHAN ET AL., APPELLANTS, v. THE CRETE MILLS, A CORPORATION, ET AL., APPELLEES.

52 N. W. 2d 333

Filed March 14, 1952. No. 33121.

*Frederick J. Patz* and *Ralph H. Gillan,* for appellants.

*Joseph Ach, Dredla & Dredla, Van Pelt, Marti & O'Gara, J. W. Weingarten, Walter P. Loomis,* and *John E. Mekota,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This action was brought in the district court for Saline County by Adolph Brchan and Ellis Brchan, plaintiffs, owners of certain real estate and personal property, against The Crete Mills, a corporation, and the Chicago, Burlington and Quincy Railroad Company, a corporation, defendants, to enjoin the defendants from unlawful and negligent interference with the waters of the Big Blue River and Walnut Creek by separate structures maintained by them, to have the same modified or abated, and also for damages sustained by the plaintiffs to their real and personal property. The defendants each, separately and specifically, demurred to the plaintiffs' petition. The trial court sustained the special demurrers of the defendants, holding that The Crete Mills and the Chicago, Burlington and Quincy Railroad Company, corporations, were improperly joined

as parties defendant; and that there was a misjoinder of causes of action, a defect of parties defendant, and a misjoinder of parties defendant, there being no joint or common liability of said two defendants. The plaintiffs elected not to file and docket a separate action against each defendant but to stand on their petition, and the action was accordingly dismissed by the trial court. From this order the plaintiffs appeal.

For convenience Adolph Brchan and Ellis Brchan, husband and wife, will hereafter be referred to as plaintiffs; The Crete Mills, a corporation, defendant, as the Crete Mills; and the Chicago, Burlington and Quincy Railroad Company, a corporation, defendant, as the railroad. In the plaintiffs' petition the Big Blue River is referred to, and for convenience we will refer to it as the river, and Walnut Creek, as described in the plaintiffs' petition, will be referred to as the creek.

In view of the trial court's order in sustaining the separate special demurrers of the Crete Mills and the railroad, we are required to examine and analyze plaintiffs' petition to determine whether or not the trial court erred.

The plaintiffs' petition is rather lengthy. We set forth a resume of it deemed pertinent to a determination of this appeal.

The plaintiffs' petition alleged that the plaintiffs own and reside on real estate situated in Crete, Nebraska, and also own personal property which they use in connection with the real estate. Crete Mills owns a dam. Extending across the river adjacent to the dam and extending several hundred feet in a northwesterly direction from the dam is a system of artificial dikes owned by the Crete Mills, used for the purpose of creating an artificial pond to prevent the river from forming a new channel to the west of the dam. The dikes have been maintained at a height of 9 feet higher than the top of the dam, which height is in excess of that authorized by law. The dikes and the dam obstruct the natural

flow of water in the river, and raise the level of the water above the dam. From time to time, due to melting snow and ice, or heavy rains in the area drained by the Big Blue River, the amount of water carried by the river is greatly increased, creating the danger of the river overflowing its banks and flooding the property of the real estate owners bordered on the river. The dikes and dam increase the danger of flooding said real estate, particularly that owned by the plaintiffs, by impeding, stopping, obstructing, and slowing down the flow of water in the river, all of which is known to the Crete Mills. The Crete Mills carelessly and negligently failed and neglected to guard against the danger, or to provide for the flow of such water over and through said dikes and dam in such a manner as to prevent flooding plaintiffs' property. On the contrary, the Crete Mills built, repaired, maintained, and raised said dikes so as to prevent the flow of any water over or through the dikes.

The petition further alleged that the railroad owns a railroad track and embankment running in a southwesterly direction through the city of Crete, and lying to the south of the real estate owned by plaintiffs; that the embankment has been built up and maintained by the railroad to a height of several feet above the surrounding land and is, in effect, a dike preventing the flow of any water from the land to the north thereof to the land south thereof, except through a small culvert which is inadequate to carry the flood waters from the river that may, from time to time, flow over and upon the land to the north of the railroad tracks; and that the embankment constitutes an obstruction of the flood channel of the river and increases the danger of flooding plaintiffs' real estate. The railroad carelessly and negligently failed and neglected to provide for adequate drainage under and through its embankment. That on or about March 8, 1949, the amount of water in the Big Blue River was greatly increased due

to the melting of ice and snow, and rainfall in the area drained by the river. That said additional water would have been carried within the banks of the river, had the river not been obstructed by the dikes and dam. No flooding of plaintiffs' property would have resulted from the increased flow of water. That because of said obstructions, the level of the water above the dikes and dam was greatly raised, causing the water of the river to flow over and out of its banks; and that because of the railroad embankment the water, after overflowing the banks of the river, could not escape to the south, and the height of the flood was greatly increased. That no flooding of plaintiffs' property would have resulted from the increased flow of water in the river except for the dikes and dam of the Crete Mill. That except for the railroad embankment the flood water would not have raised to a height sufficient. to. flood plaintiffs' property. That because of the obstructions placed across the river and its flood channel by the Crete Mills and the embankment by the railroad, the real estate of the plaintiffs was flooded to their damage in the sum of .$1,130. .

Plaintiffs' petition further alleged that north of the plaintiffs' real estate flows Walnut Creek which drains into the river above the dam belonging to the Crete Mills. That due to the maintenance of the dam and its unlawful height, the water level of the river at the mouth of the creek has been raised to such an extent that the flow of the water from the creek into the river has been impeded, and the mouth of the creek is in the backwater of the dam. That as a result, much silt has been deposited in the bed of the creek for a considerable distance back from its mouth. That at times of high water the flow of water from the creek into the river is greatly impeded and obstructed by the silt and the water level of the river at the mouth of the creek thereby causing the water of the creek to flow over and out of its banks and over and upon the real estate

of the plaintiffs. That the natural drainage of flood waters going over the banks of the creek is to the south and over and past the railroad embankment, then to the river. That the railroad embankment obstructs the flood channel of the creek. That the drainage under the embankment is inadequate to provide for the flow of flood waters from the creek which may flow over and upon the land north of the embankment. That the railroad has carelessly and negligently failed and neglected to provide adequate drainage under and through its embankment.

The petition further alleged that on or about May 8, 1950, heavy rains occurred in the area drained by the creek greatly increasing the flow of water therein. That because of matters heretofore alleged, the flow of water so increased went over and out of the banks of the creek. That the railroad embankment obstructed the flow of the flood waters and caused the same to back on and over plaintiffs' real estate. That the flooding of plaintiffs' real estate was the direct result of the obstructions placed in the river by the Crete Mills and in the flood channel of the creek by the railroad, to the plaintiffs' damage in the sum of $1,470.

The petition further alleged that on July 10, 1950, the amount of water in the river was greatly increased due to heavy rainfall in the area drained by the river. That the additional water would have been carried within the banks of the river had the river not been obstructed by said dikes and dam, and no flooding of the plaintiffs' property would have resulted from the increased flow of water. That because of said obstructions the level of the water above the dikes and dam was greatly raised causing the water from the river to flow over and out of its banks. That because of the railroad embankment the water, after overflowing the banks of the river, could not escape to the south, and the height of the flood was greatly increased. That no flooding would have resulted from the increased flow of water in the

river except for the dikes and dam of the Crete Mills. That except for the railroad embankment, the flood waters would not have reached the height sufficient to flood plaintiffs' property. That because of the obstructions placed across the river and its flood channel by the Crete Mills and the railroad, the real estate of plaintiffs was flooded to their damage in the sum of $1,190. That the maintenance of the dam and dikes by the Crete Mills, and of the embankment by the railroad, constitutes a nuisance which will be a continuing nuisance. That plaintiffs' property has been flooded on three occasions since March 8, 1949. That said nuisance and the flooding caused thereby have permanently decreased the value of the plaintiffs' real estate in the amount of $2,000, and also decreased the rental value thereof in the amount of $15 a month since March 8, 1949, or $360 to the date of the filing of this petition.

The petition further alleged that unless restrained by this court the defendants will continue the maintenance of the aforesaid obstructions of the river and the creek and their flood channels, and plaintiffs' real estate will be periodically flooded by reason of the said obstructions. That plaintiffs have been and will be, by reason of the said obstructions, irreparably injured, and have no adequate remedy at law. That plaintiffs are entitled to a permanent injunction requiring defendants to remove said obstructions.

The plaintiffs' prayer is for (1) an order permanently enjoining the Crete Mills from operating and maintaining said dam and dikes in such manner as to obstruct the natural flow of the waters in the river and creek to the extent that the waters from said streams shall, in times of high water, be diverted over and upon plaintiffs' property, and to require the Crete Mills to remove said dam and dikes or lower them to a level to be determined by the court, so that said dam and dikes will not obstruct the natural flow of waters in said streams in such manner as to flood plaintiffs' property; (2) for

an order permanently enjoining the railroad company from maintaining its embankment so as to prevent the flow of water under the same, and to require it to provide drainage sufficient for the uninterrupted flow of waters escaped from the river and creek; and (3) for a judgment against the defendants in the sum of $6,150 and costs of this action, and for such other and further relief as to the court may seem just and equitable in the premises.

The plaintiffs assign as error the judgment of the trial court in sustaining the special demurrer of the Crete Mills, sustaining the special demurrer of the Chicago, Burlington and Quincy Railroad Company, and in dismissing the plaintiffs' petition.

The plaintiffs concede the following: In this case the obstructions maintained by each of the defendants are entirely separate and distinct from each other and there is no concert of action between the two defendants in the maintenance of these obstructions. Under these circumstances there is a great deal of law to the effect that such obstructors are not jointly liable for damages resulting from the maintenance of such obstructions, but that each is liable only for the damages traceable to the obstruction maintained by him. The rule is also quite clear that persons severally, but not jointly liable, may not be joined in a suit at law for damages. Since the plaintiffs have not alleged facts showing joint liability, these defendants could not be joined in an action at law for damages.

This brings us to the question, can both defendants be joined in a suit in equity for an injunction against the maintenance of their separate obstructions?

In Norton v. Colusa Parrot Mining & Smelting Co., 167 F. 202, it is held: "* * * it is an established rule of equity that where several persons are alleged to have contributed, and are continuing to contribute, to the same general nuisance, on account of which complain-

ants suffer, all such contributing persons may be joined as defendants."

In Johnson v. City of Fairmont, 188 Minn. 451, 247 N. W. 572, the court observed that there seemed to be ample authority permitting the prosecution of an action in equity against independent tort-feasors for an injunction restraining them from doing separate and independent acts the consequences of which constitute a nuisance. See, also, 66 C. J. S., Nuisances, § 124, p. 899; 67 C. J. S., Parties, § 39, p. 960; Goldsmith & Powell v. State (Tex. Civ. App.), 159 S. W. 2d 534; Annotation, 91 A. L. R. 765.

In the annotation to 9 A. L. R. 952, appears the following: "It is a general rule that several independent tort-feasors may be joined in an action in equity for an injunction." Cases are cited in support thereof.

We conclude that defendants may be joined in a suit in equity for an injunction against the maintenance of their separate obstructions.

Defendants make reference to § 25-701, R. R. S. 1943, which provides: "The plaintiff may unite several causes of action in the same petition, whether they be such as have heretofore been denominated legal or equitable, or both, when they are included in any of the following classes: * * *." The classes of cases are unnecessary to set forth.

Section 25-702, R. R. S. 1943, provides: "The causes of action so united must affect all the parties to the action, and not require different places of trial."

It is the defendants' contention that plaintiffs' petition states more than one cause of action against each of the defendants for the following reasons: Three separate floods are set forth in the petition and the damage caused by each of the floods is set forth in detail; the unlawful acts of each of the defendants, if any, are separate and distinct; the unlawful act of the defendant Crete Mills is alleged to be the maintaining of a dam and dikes on the Big Blue River, and the petition con-

tains no allegation that the railroad was responsible for the maintaining of the said dam and dikes; the unlawful act charged to the railroad is the maintaining of its embankment, and the petition contains no allegation that Crete Mills is responsible for maintaining the railroad embankment.

In this connection the defendants rely on Sickler v. City of Broken Bow, 143 Neb. 542, 10 N. W. 2d 462. This case holds that causes of action cannot be joined unless each cause affects all the parties. The case involved the attempted joinder of two causes of action which were clearly separate and distinct. One cause of action was against the school district for creating a nuisance in the construction of an athletic field adjoining the plaintiff's property. The city had no interest in this nuisance. In the other cause, the city was charged with the wrongful appropriation of the plaintiff's property. The school district had no part in this appropriation. It is apparent that two causes of action were stated, and they could not be joined.

The defendants assert that the allegations of the petition disclose the essential character of it to be an action in law. This contention is based on the proposition that the petition alleges a specific amount of loss for each of the three floods set forth therein, in addition, alleges a depreciation of the value of the plaintiffs' real estate and loss of rental in a specific amount, and prays for a money judgment of $6,150. The following authority is applicable.

It is held in Mills v. Heckendorn, 135 Neb. 294, 281 N. W. 49: "The essential character of the cause of action and the remedy or relief it seeks, as shown by the allegations of the complaint, determine whether a particular action is one at law or in equity, unaffected by the conclusions of the pleader or what the pleader calls it, or the prayer for relief."

Applying the above rule to the plaintiffs' petition, we believe it contains sufficient allegations to disclose

an action in equity charging the defendants with creating a nuisance, which is a continuing nuisance, and alleging facts upon which the nuisance may be abated if the proof so warrants. The allegations pertaining to damages are incidental to the main relief sought.

In the instant case the structures of the defendants operated at the same time to cause the same damage, the flooding of the plaintiffs' property. During each of the floods complained of, both of the obstructions operated at the same time to hold the waters back upon the plaintiffs' property.

There is no denial but that section 25-702, R. R. S. 1943, also governs equity cases, and that causes of action cannot be joined unless each cause affects all parties. In such event section 25-702, R. R. S. 1943, Sickler v. City of Broken Bow, *supra,* and cases cited by the defendants to the same effect, would be applicable, but not so when plaintiffs' petition states but one cause of action.

This brings us to the question whether, in such suit to enjoin the nuisance, damages suffered by the plaintiff on account of such nuisance may be included in the equitable action. The cases are not unanimous on this point. Norton v. Colusa Parrot Mining & Smelting Co., *supra.* Some cases hold to the position that the collection of damages was not an actionable matter, and that an adequate remedy at law exists for the collection of damages. They further held that the defendant was entitled to a jury trial on the question of damages.

In Weingand v. City of North Platte, 108 Neb. 17, 187 N. W. 90, the court said: "An action for an injunction to restrain or abate a continuing nuisance may be maintained by any person who suffers damage or injury thereby, and he may in the same action be allowed to recover for any past or present damage which he has sustained by reason of the nuisance." See, also, Graham v. Pantel Realty Co., 114 Neb. 397, 207 N. W.

680; Siebold v. Whipple, 143 Neb. 167, 9 N. W. 2d 154; Jack v. Teegarden, 151 Neb. 309, 37 N. W. 2d 387.

In the case of Shepard v. City of Friend, 141 Neb. 866, 5 N. W. 2d 108, in a former action, a suit to obtain an injunction against the continuance of a nuisance, there was no attempt made by the plaintiff to recover damages. The court refused to grant the injunction. The plaintiffs brought this action to recover damages. The court held the matter to be res adjudicata, saying: "On the facts pleaded in the former action the plaintiffs had available two remedies, namely, injunction and damages, provided, of course, that they sustained the allegations of fact. They sought only injunction. They failed to sustain their allegations of fact, hence, there having been no mistake of remedy, under the doctrine of res adjudicata they are estopped to assert the same facts in support of an additional and concurrent remedy which is dependent solely upon those facts."

It appears from the foregoing-cited Nebraska cases that this jurisdiction has given approval to the proposition in a suit to enjoin a nuisance, damages suffered by the plaintiff on account of such nuisance may be included in the equitable action. This being an action in equity, the main relief sought is the abatement of the nuisance. The only damages that could be recovered would be the damages occurring as a result of the nuisance, if such be proven. This is based on the following rule: "It is a well-settled principle of equity jurisprudence that, where a court of equity has obtained jurisdiction of a cause for any purpose, it will retain it for all, and will proceed to a final determination of the case, adjudicate all matters in issue, and thus avoid unnecessary litigation." Schreiner v. Witte, 143 Neb. 109, 8 N. W. 2d 831. See, also, Security Investment Co. v. Golz, 151 Neb. 172, 36 N. W. 2d 862; Herrin v. Johnson Cashway Lbr. Co., 153 Neb. 693, 46 N. W. 2d 111.

Among numerous decisions from foreign jurisdictions that specifically adopt the rule are the following:

In the case of Mitchell Realty Co. v. City of West Allis, 184 Wis. 352, 199 N. W. 390, 35 A. L. R. 396, a suit brought against eight defendants to abate a nuisance caused by the pollution of a stream, and recover damages, upon motion of the defendants, allegations as to damages were stricken. The court said: "Under the doctrine well established by this court, if a court of equity takes jurisdiction of a matter it will retain jurisdiction for the purpose of doing complete justice between the parties, and will, in a proper case, not only extend its equitable remedy but will also permit the recovery of damages." The court overruled the order of the trial court in striking the plaintiff's allegations as to damages, holding: "Had the action proceeded, the plaintiffs could have obtained their equitable remedy for the abatement of the nuisance, and, upon the determination by the court of the proportionate share of the damage caused by each of the defendants, were entitled to judgment for such amounts, thus disposing of the entire litigation in one action. To accomplish such a result is one of the principal functions of a court of equity." See, also, McMechen v. Hitchman-Glendale Consolidated Coal Co., 88 W. Va. 633, 107 S. E. 480; Gilbert v. Boak Fish Co., 86 Minn. 365, 90 N. W. 767, 58 L. R. A. 735; Stoner v. Mau, 11 Wyo. 366, 72 P. 193; Carthew v. City of Platteville, 157 Wis. 322, 147 N. W. 375; Karns v. Allen, 135 Wis. 48, 115 N. W. 357, 15 Ann. Cas. 543.

With reference also to the recovery of damages, damages to personal property located on the real estate may also be recovered in this equity action. See, Graham v. Pantel Realty Co., *supra;* Weingand v. City of North Platte, *supra;* Stoner v. Mau, *supra.*

It is apparent that damages recoverable in an action of this kind are not limited to damages to the real estate alone, but include damages to personal property located thereon.

For the reasons given herein, the special demurrers of the defendants should have been overruled, and the

trial court's judgment in sustaining the special demurrers of the defendants is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.