JOSEPH V. SHAVLIK, APPELLEE, V. PHILIP WALLA ET AL., APPELLANTS.

FILED MAY 5, 1910. No. 16,029.

1. Trial: VIEW OF PREMISES: REVIEW. Where a controlling question involved in a case tried to the court is the topography of a certain locality, and the trial court, by consent of and in company with the parties and their attorneys, personally visits such locality and views the topography thereof, its findings upon such question are entitled to great weight with the reviewing court.

2. Waters: DRAINAGE; LIABILITY. "An owner's right to discharge

surface water from his premises does not extend so far as to permit him to collect it in a volume and by means of an artificial channel discharge it upon another's land, contrary to the natural course of drainage, to the latter's damage and detriment." *Todd v. York County*, 72 Neb. 207.

3. **Limitation of Actions: Flooding of Lands: Accrual of Action.** The right to damages for the wrongful flooding of land by the digging of a ditch which collects surface water in a volume and directs it in a course, contrary to the natural course of drainage, does not accrue when the ditch is dug, but when the flooding of the land actually results.

Appeal from the district court for Saunders county: George F. Corcoran, Judge. *Affirmed as modified.*

*Jesse M. Galloway* and *F. Dolezal*, for appellants.

*H. Gilkeson* and *Charles H. Slama*, contra.

Fawcett, J.

Plaintiff and defendants are owners of farm lands in the Platte valley in Bohemia precinct, Saunders county. The Platte river at this point flows from west to east, the general slope of the valley being toward the east. "Kunesh Hollow" is one of the outlets from the bluffs overlooking the valley at this point, and drains, in round numbers, 1,000 acres of land. Its mouth is upon the land owned by defendant Kavan. The general direction of this hollow is to the northwest. Prior to 1884, when the Platte valley was reached the water ceased to flow in a solid stream and became diffused and spread out over the surface of the adjoining lands, all of which seem to have been more or less low and flat. In 1884 some of the defendants and the ancestors of the others met at the house of Kavan and entered into an agreement for the construction of a ditch to prevent the waters when leaving Kunesh Hollow from flowing to the north and east. In doing so they scraped or scooped out the channel which had been made by the water before becoming diffused, and then dug a ditch from four to six feet deep and about the same in

52

width at the bottom, and 12 to 14 feet wide at ·the sur-
face, northwesterly across the land· of defendant Kavan,
and thence due west on the line between the lands of de-
fendants Kavan and Philip Walla to a point about 20
rods east of the west line of said defendants, and the same
distance, plus the width of a public road, east of the north-
east corner of plaintiff's land.   Upon reaching the last
named point an outlet was made for the water in a
northerly or northwesterly direction into ·a large marsh
upon the land of defendant Walla.   Prior to or contem-
poraneously with the construction of this ditch, defend-
ants filled up another short ditch which had been pre-
viously dug from the mouth of Kunesh Hollow due north.
If the water from Kunesh Hollow were permitted to flow
through this last named ditch, it would, after leaving
such ditch, scatter over the lands of some of the defend-
ants, and find its way in an easterly direction to the
Platte river.   But, when caused to run through the first
named ditch into the marsh on defendant Walla's land,
the land of defendants would be relieved of any danger of
flooding except upon occasions when the water would
come down Kunesh Hollow in such volume as to overflow
the banks of the ditch, which, we take it, seldom occur·
red.   As the land on the hillsides of Kunesh Hollow be·
came cultivated more and more, the soil, with each suc·
ceeding freshet, would be carried down through the ditch
and deposited in the marsh on Walla's land.   The result
of this was that eventually the marsh referred to became
entirely filled and covered with a rich soil, so that what
had at one time been a valueless marsh became a fertile
field.   Defendants failed and neglected to keep the ditch
cleaned out, the evidence showing that during all the
years from 1884 down to the time of the trial they had
attempted to clean it out but once, and then only partially
performed the work.   As a result the ditch, and particu-
larly the west end of it, as well as the marsh referred to,
have filled up so that, for the last three or four years be-
fore the commencement of this suit, water from the

Kunesh Hollow for the first time overflowed plaintiff's
land, causing him more or less damage. Plaintiff brought
this suit to enjoin defendants from gathering and empty-
ing the water drained by said Kunesh Hollow upon plain-
tiff's land, and from maintaining and using the ditch re-
ferred to, and for a decree ordering that said ditch be
filled up, and that defendants be compelled to take care
and dispose of surface waters drained by said Kunesh
Hollow so that plaintiff should not be damaged thereby,
and for his damages already suffered in the sum of $150.
For answer defendants deny all allegations in plaintiff's
petition, and, further answering, aver that plaintiff's land
is a natural sink, into which surface water from surround-
ing lands to the south, east and west have drained from
time immemorial; that a certain ditch dug by plaintiff
himself caused and facilitated the gathering of waters
upon his land, and that plaintiff's cause of action, if any,
is barred by the statute of limitations. The reply is a
general denial.

After both sides had rested, by agreement of the par-
ties, the trial judge, in company with the parties and
their counsel, visited the locality and viewed the ditch and
its surroundings. This adds great weight to the court's
findings. In a very full and able opinion, filed in the case,
the trial court says: "From this view it appears to the
court that in a state of nature there was what may be
called a hogback or whaleback, extending northwest across
the Kavan land. This little rise in the natural surface
of the ground formed a watershed which turned the flood
waters to the west and to the east. In extending the
ditch to the northwest the projectors seem to have chosen
the crest of this so-called whaleback and dug their ditch
upon it and carried it along to the north line of the Kavan
eighty, where it turns west. This is very apparent at the
point where the line of the Northwestern railroad crosses
the ditch, near the north line of the Kavan eighty. At
this point it is shown in the evidence, and is very mani-
fest upon a view of the place, that the water which over-

flows the ditch at that point flows both to the east and to the west. Water leaving the ditch on the west side runs west to the land of the plaintiff, and water leaving the ditch on the east side runs east to the land of other of the defendants. * * * While nearly all of the defendants' witnesses testify that the water ran northwest before the ditch was dug, still, none of them testify that it reached the land of the plaintiff at that time. There is a sharp conflict as to whether the water turned east after coming out of the bluffs through Kunesh Hollow, or whether it continued northwest. When the matter is considered in all of its bearings, it is not very material which set of witnesses is in the right in this contention. All admit that it did not reach the plaintiff's land. This is the material point in controversy. It must be apparent, however, that a great portion of this water must have followed the natural fall of the Platte river to the east, which fall is about seven feet to the mile. Otherwise the defendants Cippera, Hajek and Walla, living from a half mile to two miles east, would have had no interest in constructing the ditch to prevent the water from going in that very direction. This fact is obvious to any one who examines the ground, even at this late day. This water was conducted northwest and then west for some purpose. The only reasonable purpose of these defendants in incurring the great expense of constructing the ditch to so conduct the water was to prevent it from turning east after coming out of the hills, and overflowing their own lands. The defendants joined together and constructed the ditch and gathered the flood waters into it, and conveyed the water to the swamp in the Walla land as before described. Then, when the Walla land filled up so that it will receive no more water, the defendants elect to practically abandon their enterprise, and allow the water conducted by their efforts to this point to take care of itself, and to flow out of the ditch over the field of Kavan and upon the plaintiff's land." This resume by the court

tells the whole story and renders any further discussion of the evidence superfluous.

Defendants contend that this water was surface water, and seek to shield themselves behind the rule that surface water is a common enemy, and that they had a right to dispose of this surface water as was done. This question has been well settled in this state. In *Todd v. York County*, 72 Neb. 207, following *Fremont, E. & M. V. R. Co. v. Marley*, 25 Neb. 138, we held: "An owner's right to discharge surface water from his premises does not extend so far as to permit him to collect it in a volume and by means of an .artificial channel discharge it upon another's land. contrary to the natural course of drainage, to the latter's damage and detriment." Yet this is just what the defendants in the case at bar have done.

Defendants must also fail in their attempt to shield themselves behind the statute of limitations. In *Chicago, R. I. & P. R. Co. v. Andreesen*, 62 Neb. 456, we held: "The right to damages for an obstruction of a stream by an insufficient culvert or drain does not accrue when the railroad is built, but when the overflow actually results." In the opinion we said: "A man has no right to anticipate an injury from the probable negligence of some one else. The statute of limitations does not run until the injury has been actually received. Plaintiff had no right to sue defendant until defendant injured him by a negligent· act. His right of action did not accrue in this case until his land had been overflowed; hence the statute of limitations would run from the date of the overflow of the land, and not from the date of the completion of defendant's railroad." In the case at bar, plaintiff could not have maintained an action against defendants until he suffered damage as the result of their wrongful act. He was not bound to anticipate that they would neglect their ditch and permit it to fill up with the .accumulation of years until the bottom of the ditch was practically on a level with the adjoining lands, nor that, when the swamp on Walla's land became filled up so that it would no

longer serve as a receptacle for the surplus water, defendants would not resort to other means to avoid causing him damage.

Defendants further contend that plaintiff does not in his petition allege negligence in the construction of the ditch. We think the trial court very aptly met that contention in the following language: "It is contended by the defendants that because negligence is not alleged or proved plaintiff cannot maintain his action. True, it is not alleged in the bill for the injunction that the ditch was negligently constructed. This we cannot conceive to be necessary under the facts proved in this case. What possible difference, in law, can it be whether the water was negligently conveyed upon the plaintiff's land, or whether the object was very carefully, but deliberately, achieved? If a man might be liable if he negligently drive his team and wagon upon a foot passenger, would it be seriously contended that he would not be liable, if he deliberately and intentionally accomplished the act? We think not." We also think not.

After considering all of the evidence, the court awarded plaintiff $100 damages. This allowance we think was fully justified by the evidence. The decree must, however, be modified. It adjudges that the defendants who have appealed "be, and they and each of them hereby are, perpetually restrained and enjoined from maintaining and using the said ditch constructed by them described in paragraph 9 of plaintiff's petition, and these said defendants, and each of them, hereby are commanded to fill up the said ditch, and they, and each of them, are further commanded and ordered to place and make the outlet of Kunesh Hollow in the same condition, as nearly as may be, as it was before they constructed the said ditch complained of and described in paragraph 9 of plaintiff's petition, and these defendants, and each of them, are further commanded and ordered to remove all earth, filling and obstructions placed by them in and along the outlet to said Kunesh Hollow, and particularly that part of the

outlet of said hollow that formerly ran in a northeast-erly direction, and these said defendants, and each of them, are hereby further commanded and ordered to so take care of the flood waters of said Kunesh Hollow, and to so provide for the outlet for said waters, that said flood waters shall not flow upon or over or damage the lands of the plaintiff." We think this imposes upon defendants too great a burden in two particulars: (1) They should not be compelled "to fill up" the entire ditch. If they take the proper steps to prevent the water from flowing through it, whether by filling or by any other method which will accomplish that end, they will do all that plaintiff has a right to demand. (2) If they take such steps as will restore the outlet of Kunesh Hollow to "the same condition, as nearly as may be, as it was before they constructed the said ditch", they will do everything that the law requires. They should not be burdened with the further duty of so taking care of the flood waters of Kunesh Hollow that said waters shall never flow upon or over plaintiff's land. If the conditions are restored to their normal state, and some of the flood waters should eventually reach plaintiff's land and damage him without their fault, defendants would not be responsible therefor.

As thus modified, the decree of the district court is affirmed.

AFFIRMED AS MODIFIED.