ARTHUR D. COMPTON, APPELLEE, v. ELKHORN VALLEY DRAINAGE DISTRICT, APPELLANT.

FILED JANUARY 20, 1933. No. 28472.

*Courtright, Sidner, Lee & Gunderson* and *George L. De Lacy,* for appellant.

*Mullen & Morrissey* and *Wells, Martin, Lane & Offutt,* contra.

Heard before DEAN, GOOD, EBERLY and PAINE, JJ.

DEAN, J.

This action was begun in the district court for Douglas county by Arthur D. Compton against the Elkhorn Valley Drainage District to recover for damages to crops on lands owned by him in 1923, 1924, and 1925, alleged to have been caused by reason of an overflow of water thereon through the negligence of the defendant district. Upon the death of Compton, the action was revived in the name of his widow, Mary Esther Compton, the plaintiff herein.

Under three causes of action, the jury found for the plaintiff in the following sums, namely, $1,200 for damage to 360 acres of corn in 1923; $4,500 for damage to 420

acres of corn in 1924; and $800 for damage to 420 acres of corn in 1925, together with lawful interest on the several sums. The defendant district has appealed.

This is the second appearance here of this action. See *Compton v. Elkhorn Valley Drainage District,* 120 Neb. 94. On the former appeal the judgment was reversed and the cause remanded for further proceedings, the principal question for determination being whether the drainage district was under legal obligation to maintain its works. We there held: "A cause of action will arise in favor of one so damaged when the damage occurs and not as of the date of the original construction of the works." And we also there held that the district is liable for such damage to plaintiff's crops as may be found to have been caused by surface water collected from other watersheds and brought to his lands and left there by the failure of the district to take care of such extra burden.

The defendant district contends that the trial court submitted the case to the jury on the second trial solely from the fact that he was reversed for previously having taken it from the jury, and that the court erred in assuming that he was bound by the decision of this court and that he otherwise would have given a peremptory instruction to find for the defendant. The district principally complains in that there was no attempt made to allocate the damage by foreign water from the damage by rainfall or other sources, and that the judgment is not supported by the evidence.

The Fouts and Creamery Road ditches involved herein were located and established by Douglas county in 1879, at a depth of about two and a half feet, but they were cleaned and deepened by the county at a later period. The defendant district was incorporated in 1909 and embraces about 55,000 acres of land in Douglas and Sarpy counties. Prior to 1909, and ever since, the plaintiff has been the owner of 480 acres of land within the district. The Creamery Road ditch is located on the east side of

plaintiff's land and the Fouts Road ditch is on the west side, the ultimate outlet of both ditches being the Elkhorn river, which is about two miles and a quarter east of the west line of the Compton land.

It appears that the nature of the soil in the Elkhorn Valley causes the ditches to fill and become clogged to some extent and that the drier the season is the more do the ditches fill with sediment. As originally planned by the district, the ditches will carry off an average heavy rainfall of 24 hours without damage to growing crops, providing no other heavy rains have fallen immediately prior thereto. The ditches were constructed to divert both surface and subsurface waters.

The plaintiff's contention is that, after the construction of the ditches, the defendant permitted them to become filled with sediment and debris to such an extent that they failed to carry away water flowing to the plaintiff's land in the natural course of drainage. But the defendant contends that the plaintiff's lands are low and swampy and that the ditches at no time injuriously affected such lands, but did in fact benefit them.

The record herein is voluminous and there is more or less repetition in the evidence of the many witnesses called by both the plaintiff and the defendant. But the fact appears to be established that the Compton land is low in certain places and that there are many swales thereon. And it is disclosed that at one time a large lake was on the land which covered several acres and that duck and geese hunting as well as fishing were there indulged. There is evidence tending to prove that a large portion of the Compton land was covered with water at various times during the years in question and that in some places the water reached a depth of about two feet and required from a day to a week to drain. It appears, however, that it was in the swales, and not on the higher ground, that the water reached the depth of two feet, and while it appears that the Creamery Road ditch overflowed at one point near the Compton land, it

is disclosed that the contour of the land was such that none of the land except that in the swales covering a few acres was flooded thereby. The record discloses that water stood all over the country in 1923, and especially in 1924, and that the corn generally was washed out by reason of excessive rains. One witness whose land is near the Compton land testified that his corn crop in 1923 was of only fair quality, and that in 1924 it was soft and sour on account of the wet season. There is also evidence to the effect that the ditches filled in some places, and that in 1924 the water ran across the road from the Creamery Road ditch, but, as above pointed out, it does not appear that the overflow extended beyond the low places.

Many witnesses, in behalf of both the plaintiff and the defendant, testified that, at the time in question and especially in 1924, the rain fell copiously for several weeks and that the weather was unusually cool. They also testified that it was necessary to replant the corn, in some instances more than once, on the higher ground as well as in the lower regions. One witness testified that he was unable to plant his corn until July because of the rain, and that there was little or no corn in the low places and only a fair crop on higher land. It also appears from the evidence of one witness that the average yield of corn in 1924 was only 12 bushels an acre as compared to 60 and 85 bushels in other years. Another testified that the Compton land contains many sloughs from which the water does not drain quickly after a heavy rainfall, and that there are other portions which cannot be drained because of the type of the soil. He also testified that the ditches functioned as well as any in the country with the exception of one or two points where they filled to some extent, but that this had no serious effect on the Compton land.

It is established that an abundant rain fell for 22 days out of a total of 28 from the middle of May until some time in June, 1924. There is no proof, however, that the

damages alleged to have been occasioned to the plaintiff's corn crops during the years in question were in fact occasioned by foreign water negligently permitted to overflow thereon by the defendant district. That there was much water on all of the land in the vicinity is true, but the fact remains that all of the crops throughout the district generally were very poor as a result of the excessive rains, and this was true of the higher lands as well as the low lands. It appears to be conceded that the plaintiff's lands would have been much wetter in the absence of the ditches.

The location of the corn crops during the years in question is vague, but the evidence appears to disclose that the lower places generally were in pasture and meadow and that the corn was on higher ground. As noted above, there is no proof that the water overflowing the Creamery Road ditch at one point or from the Fouts Road ditch ever covered any of the Compton land beyond the swales. In any event, the evidence fails to conclusively trace the exact damage attributable to foreign watershed, if any, and to show the extent of such damage.

The drainage district is liable for such damages to crops as may be found to have been caused by surface waters collected from foreign watersheds and brought to plaintiff's lands and left there through the failure of the district to take care of such extra burden. *Compton v. Elkhorn Valley Drainage District,* 120 Neb. 94. But, in an action against the district to recover for damages to crops through the alleged negligence of the district, it is incumbent on the plaintiff to allocate the damage arising from foreign watershed from damage by prolonged and excessive rainfall and tributary sources, and to show the extent of such increased overflow as well as the amount of damages arising therefrom. Upon an examination of the record, we conclude that allocation of damage by foreign water has not been attempted, nor has it been shown that the portion of land alleged to have been affected by foreign water was in corn, and in the absence

of proof of such allocation, the judgment cannot be sustained. *Harris v. Lincoln & N. W. R. Co.*, 91 Neb. 755; *Murphy v. Chicago, B. & Q. R. Co.*, 101 Neb. 73; *Brown v. Chicago, B. & Q. R. Co.*, 195 Fed. 1007. Other assignments of alleged error have been pointed out, but, in view of our decision, we do not find it necessary to discuss them. The judgment is reversed and the cause remanded.

REVERSED.