HERMAN SEIBOLD, APPELLANT, V. FRED WHIPPLE, APPELLEE.
9 N. W. (2d) 154

FILED APRIL 2, 1943. No. 31545.

Butler, James & Morrison, for appellant.

Fred J. Schroeder and Perry, Van Pelt & Marti, contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

This action was commenced by Herman Seïbold, plaintiff and appellant, in the district court for Frontier county, against Fred Whipple, defendant and appellee, for the purpose of restraining and enjoining the defendant from obstructing the natural flow of water from Clifford Canyon and two ravines adjacent thereto and diverting said waters onto the land of the plaintiff by a ditch, and for an order requiring the defendant to remove the dam or embankment at the mouth of Clifford Canyon and to fill the ditch and to recover damages that plaintiff's land has sustained by reason thereof. Upon the issues made by the defendant's answer and the plaintiff's reply thereto the matter was tried to the court. From a judgment of the lower court finding that appellee, who will herein be referred to as defendant, had, after the commencement of this action on March 21, 1941, but before trial, caused the dam or embankment to

be removed and the ditch filled and therefore denying the appellant, who will be herein referred to as plaintiff, an injunction but without prejudice to the renewal of the application therefor and taxing the costs to defendant but denying the plaintiff damages, the plaintiff has appealed.

The contention of the plaintiff here is that the trial court erred in failing to allow him damages.

That the plaintiff was entitled to recover for damages, if any, which he is able to establish is without question, for as is said in *Todd v. York County,* 72 Neb. 207, 100 N. W. 299, and *Shavlik v. Walla,* 86 Neb. 768, 126 N. W. 376: "An owner's right to discharge surface water from his premises does not extend so far as to permit him to collect it in a volume and by means of an artificial channel discharge it upon another's land, contrary to the natural course of drainage, to the latter's damage and detriment," and in *Leaders v. Sarpy County,* 134 Neb. 817, 279 N. W. 809: "Where surface water resulting from rain and snow flows in a well-defined course, whether it be a ditch, swale or draw in its primitive condition, its flow cannot be arrested or interfered with by a landowner to the injury of neighboring proprietors."

"For such injury injunction is a proper remedy and an injured party may recover such damages in the same action as he may have sustained by such wrongful act." *Graham v. Pantel Realty Co.,* 114 Neb. 397, 207 N. W. 680.

The facts, as admitted by the pleadings and disclosed by the evidence, show the plaintiff to be the owner of the east half of section 17, township 7, range 27 west of the 6th P. M. in Frontier county, which land he acquired in 1935 and prior to which it was known as the Barry farm; that E. E. Nelson is the owner of the east half of southwest quarter of said section 17 which lies immediately west of and adjacent to the southeast quarter of plaintiff's land and which lands are divided by a county road located on the half-section line, this land formerly being owned by Frank Murray; the defendant was at all times for the purpose of this litigation the owner of the west half of southwest quarter of

section 17 and east half of southeast quarter of section 18, all in township 7, range 27 west, which lies immediately west of the land of Nelson, and also those lands immediately south of and adjacent to the lands of the plaintiff and Nelson. Before 1921 Medicine Creek flowed through the lands of Nelson and defendant in sections 17 and 18 and the southeast quarter of section 17 of plaintiff's land forming a meandering horseshoe on the lands of the defendant and Nelson which reached down to within a short distance of the outlet of Clifford Canyon and the ravines adjacent thereto on the east. In 1921 Whipple and Frank Murray, who was then the owner of the Nelson land, dug a ditch across the top of this horseshoe starting in the northwest part of the west half of southwest quarter of section 17 and running thence southeasterly into the Nelson land and joined with Medicine Creek before it passed from the Nelson land to the Barry land through a bridge located on the county road. That at all times prior to 1936 Clifford Canyon and the two ravines adjacent thereto on the east, which will hereinafter be referred to as the canyon and which are normally dry, drained their surface waters northeasterly from where it flowed out of the canyon onto the defendant and Nelson lands in Medicine Creek basin, which was subject to floods and overflow from heavy rains or other sources of water, and there commingled with the water of Medicine Creek and then flowed on east in the creek or across the county road and over plaintiff's land. In the early part of 1936 the defendant constructed an embankment or dam some 907 feet in length east and west across the mouth of the canyon and from the eastern end thereof dug a ditch extending east to where his land joined with that of Nelson, which dam or embankment and ditch will hereafter be referred to as the diversion. From that time until it was removed in the latter part of March, 1941, all the waters collecting in the canyon flowed eastward through the ditch and across the Nelson land, then over the county road and across the plaintiff's land south of a cottonwood tree located on the county road some 15 or 16 rods north of the south

line of plaintiff's land, then easterly to a gully or ditch on the east side of plaintiff's land, which is south of Medicine Creek, and into Medicine Creek itself. Although there is some evidence of washing south of the cottonwood prior to 1935, the evidence generally shows the low part of the plaintiff's land south of Medicine Creek was north of the cottonwood and between it and the bridge over Medicine Creek on the county road. There was a culvert at this location and the flow was generally east therefrom to the gully or ditch running into Medicine Creek. In 1935 there was a very heavy flood in the Medicine Creek basin covering all of the lands here in question and it caused considerable silting or filling and also washing. It appears the culvert north of the cottonwood was either washed out or silted in by this flood and that the low ground north and east of the cottonwood was filled in and washing or erosion took place south of the cottonwood and in an easterly direction therefrom. After the defendant constructed the diversion in 1936 none of the waters collected in the canyon were permitted to flow into the Medicine Creek basin as they had formerly done but were forced across the lands of Nelson and then across plaintiff's land and into Medicine Creek and such waters on occasions flowed across these lands exclusive of any water from any other source and this condition continued until the time it was removed. There is evidence in the record that during this same period the flood waters arising solely from Medicine Creek flooded these lands and that on other occasions flood waters from Medicine Creek commingled with the waters from the canyon flooded these same lands and while the evidence shows that the washed area south of the cottonwood and extending easterly over the plaintiff's land grew in size and depth during this period and that it was damaged by these waters, however, there is no evidence showing the damage caused by the water from any one of these sources or the extent thereof.

As this court stated in *Compton v. Elkhorn Valley Drainage District,* 124 Neb. 299, 246 N. W. 340, which was an action to recover against the drainage district for damages

arising out of the collection and discharge on plaintiff's lands of surface waters from a foreign watershed: "The drainage district is liable for such damages to crops as may be found to have been caused by surface waters collected from foreign watersheds and brought to plaintiff's lands and left there through the failure of the district to take care of such extra burden. *Compton v. Elkhorn Valley Drainage District*, 120 Neb. 94. But, in an action against the district to recover for damages to crops through the alleged negligence of the district, it is incumbent on the plaintiff to allocate the damage arising from foreign watershed from damage by prolonged and excessive rainfall and tributary sources, and to show the extent of such increased overflow as well as the amount of damages arising therefrom." Likewise in *Harris v. Lincoln & N. W. R. Co.*, 91 Neb. 755, 137 N. W. 865: "So it seems clear that the plaintiffs' claim that the new construction either caused or contributed to the overflow, of which they complain, is not sustained by the evidence, but rests upon assumption or conjecture. In *Treichel v. Great Northern R. Co.*, 80 Minn. 96, it was said: 'Damages cannot be predicated upon conjecture or mere speculation.' It would seem clear that in this case, to sustain a recovery, the plaintiffs must show the excess of the overflow, which was caused by the acts complained of, over that which would have resulted from natural causes, and the extent of the damages caused thereby, and upon this point the record contains no direct or competent evidence." See, also, *Brown v. Chicago, B. & Q. R. Co.*, 195 Fed. 1007.

The evidence shows that plaintiff's land was damaged by erosion during the period that the defendant diverted the surface waters onto his lands and the defendant is liable for such damages as may be found to have been caused thereby. *Graham v. Pantel Realty Co., supra; Todd v. York County, supra; Leaders v. Sarpy County, supra.* However, the burden of proof was on the plaintiff to establish the damage created thereby and the extent thereof. While it is established that the surface waters diverted by the de-

fendant did flow across the plaintiff's land while the diversion remained across the mouth of the canyon, it is also established that flood waters from Medicine Creek alone and flood waters from Medicine Creek commingling with those of the canyon ran across and flooded this same land during this same period without any evidence being offered to show the damages from any of these various sources or the extent thereof. Presumably whatever erosion or damage to this land took place during this period was occasioned by these flowing waters, but we have frequently held that verdicts of the jury or judgments of the court should not be based on conjecture or speculation, and it being incumbent upon the plaintiff to establish and allocate the damage to his land from the waters diverted from the canyon during the period they were so diverted as distinguished from the damages of other flood waters, and the plaintiff having failed to adduce any evidence on this question, any judgment of this or the lower court would necessarily have to be based on either conjecture or speculation; therefore, the judgment of the lower court denying damages is affirmed.

AFFIRMED.