JAMES MONTAGUE v. MINNA MARUNDA.

FILED MAY 5, 1904.    No. 13,586.

1. Jurisdiction: APPEARANCE. When a party who had made a special appearance in an action or proceeding moves the court for affirmative relief in his own behalf, he thereby makes a general appearance and subjects himself to the jurisdiction of the court.

2. Mortgage. Foreclosure: DISTRIBUTION OF SURPLUS: NEW PARTIES. Upon the foreclosure of a mortgage, and a sale and confirmation thereunder, if a surplus remains after the payment of the mortgage debt and costs, the district court, in its equitable jurisdiction, has full power, upon an application being made for a distribution of the surplus, to bring in all parties necessary to a determination of the ownership of the fund, and to try and determine that question.

3. Title by Prescription: TACKING: PRIVITY. Privity must be shown between adverse claimants of real estate before the possession of one can be tacked to the possession of the other for the purpose of completing title by prescription; but this privity may exist by grant, devise, purchase or descent, and the adverse possession of an ancestor may be taken advantage of by his heirs, if their possession has been continuous with his, exclusive, and under the

same claim of right as made by him. In such case, the ouster and disseisin made by the ancestor is continued by the heirs and relates back to his original entry.

ERROR to the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Allen G. Fisher,* for plaintiff in error.

*A. W. Crites* and *W. W. Wood, contra.*

LETTON, C.

This is a proceeding in error to review the action of the district court for Dawes county in distributing a surplus of money arising from a sale under a mortgage foreclosure. The facts are as follows: In 1888, Albert Neuman and Lulu Neuman, his wife, resided upon a certain tract of 160 acres of land in Dawes county, which he had taken as a preemption claim and had made final entry upon. On the 1st day of August, 1888, Neuman and his wife executed a mortgage to W. H. Lanning, trustee, to secure a loan on the premises. After the execution of the mortgage a deed was apparently executed by Lulu Neuman, as grantor, her husband joining with her in the execution of the deed, to one Edward Roberts. This deed was acknowledged by Mrs. Neuman alone before one Peter Hall, a justice of the peace in and for Dawes county. Roberts moved upon the land with his family in March, 1890, and lived there for several years, when he moved to other land adjoining the same, but fenced the Neuman tract, together with his other land, in one inclosure, living within the inclosure. In 1895 Roberts died, but his widow remained in possession of the premises until about the 30th day of March, 1900, when deeds were executed by the heirs of Roberts and his widow to one Ed Marunda, and Marunda took possession under the same. On May 17, 1900, an action was begun in the name of the McKinley-Lanning Loan & Trust Company to foreclose the mortgage. Albert Neuman, Lulu Neuman, Edward

Roberts, Mrs. Edward Roberts and the unknown heirs of Edward Roberts were made parties defendant.

It is stated in the briefs that Ed Marunda was made a party to this foreclosure action on his own application, and the record shows that he filed an answer, setting up that he had a legal interest in the land in controversy, "said legal interest being an equitable title to the lands described in the plaintiff's petition herein, by a convey-ance dated April 3, 1900," and praying that he be per-mitted to participate in any surplus money remaining from the sale of the lands. No service was had upon Albert Neuman, and no decree taken as to him, but a decree of foreclosure was rendered in the case against the other defendants, ordering the land sold to satisfy the mortgage. The decree of foreclosure makes no finding with reference to the interest of Marunda in the prem-ises. A sale was had under the decree, and Marunda bought the land, but this sale was set aside and a new sale made to James Montague. This sale was confirmed, and a deed ordered and made to Montague, March 13, 1903. After the payment of the mortgage debt, there remained in the hands of the sheriff a surplus of $610.45, which is in controversy in this case. On the 11th day of January, 1901, a quitclaim deed was executed by Albert Neuman to James Montague for this land, which was filed for record on February 9, 1901, in the office of the county clerk of Dawes county. The consideration recited in this deed was the mortgage indebtedness upon the land and $5 in hand paid. Ed Marunda died in August, 1902, and his wife, Minna Marunda, was apparently appointed administratrix of the estate.

A motion was afterwards filed by Minna Marunda, asking the court to return to her, as administratrix of Ed. Marunda, the money paid in by Marunda to the sheriff upon his bid for the land, and also praying for an order upon the sheriff, to pay to the clerk of the court the surplus in his hands arising from the sale to Montague. In the meantime Montague had demanded the surplus from the

sheriff, which demand was refused, and an action was brought by him against the sheriff to recover the same. On the 17th of April, 1903, a hearing was had upon these motions of Minna Marunda. The motions were sustained, and the sheriff ordered to pay to the clerk of the court "the surplus now in his hands, amounting to $610.45, and to further pay said administratrix the $900 bid by Ed Marunda at the sale which had been set aside. Montague excepted to these orders. It appears that Minna Marunda, as the widow of Ed Marunda, and one Herman Marunda, a brother of Ed Marunda, had, before this time, filed petitions for a part of the surplus, and the court ordered that the plaintiff and James Montague plead .to said applications within 30 days. On July 13, 1903, Montague filed a special appearance, and objections to the jurisdiction of the court, which objections were overruled, and exceptions taken, whereupon he presented to the court a demand for a trial by jury, which was refused and exception taken. Afterwards, he filed an answer, setting up that he was plaintiff in another action pending against the sheriff for the same money; that the court has no jurisdiction; denies the ownership of Ed Marunda or his heirs to the land in question; alleges that the premises were the homestead of the Neumans until the year 1900, and alleges that the facts set forth in the petition do not constitute a cause of action. A reply was filed by the Marundas denying every allegation in this answer. Hearing was had upon the 21st day of July upon the issues thus framed. The court found that the land, at the time of the death of Ed Marunda, belonged to him, and descended to his heirs, subject to the dower estate of his widow, Minna Marunda; ascertained the value of her dower estate, and the shares of the respective petitioners; directed the payment of the same to them, and found generally in favor of the petitioners and against Montague. Exceptions were taken, and a bill of. exceptions duly settled and filed, which presents the evidence in support of this proceeding for review.

As to the special appearance and objections to the

jurisdiction of the court, filed by James Montague on the 13th of July, 1903, it is sufficient to say that, on the 17th day of April, at the time that the hearing was had upon the motions of Minna Marunda, above mentioned, the record shows that an appearance was made by Montague, objecting to the motions; and, further, a motion was made on his own behalf by Montague, seeking to put the powers of the court in motion for his own benefit. By thus appearing and invoking the action of the court, Montague appeared generally in the cause, and could not afterwards be heard to say that his appearance was only special. The objections to jurisdiction were properly overruled. As to the demand for a jury made by Montague, a court of equity had obtained jurisdiction of the parties and of the subject matter, by virtue of the foreclosure proceeding and the subsequent appearance made by Ed Marunda and Montague, and the widow and heirs of Marunda. Confirmation had been had, and the surplus had been brought into court as section 854 of the code provides. All persons who claimed to have any interest in the surplus being before the court, it was within its power, as it was its duty, to retain the cause for all purposes necessary to determine the matters still pending, and to do complete and final justice between the parties. To voluntarily relinquish its jurisdiction over the fund, which was in its possession, would be to surrender one of the most beneficial powers of a court of chancery. The fund being in the hands of the court, it was its duty to ascertain to whom it belonged, and not to relegate the parties to another court for that purpose. No error was committed in retaining the matter of the determination of the ownership of the surplus in its hands, and in refusing the demand for a jury made by Montague. The action was not one of those in which a constitutional right to a jury trial exists. It was not in assumpsit, as was *Yager v. Exchange Nat. Bank,* 52 Neb. 321, cited by plaintiff in error. These considerations also dispose of the assignment that the court erred in directing the sheriff to pay the surplus into court.

Objection is made that the decision is not sustained by sufficient evidence, is contrary to the weight of evidence and is contrary to law; and further objections are made to the court's admitting the documentary evidence of the applicants. As to the deed from Lulu Neuman to Edward Roberts, it appears that, at the time this deed was made, the property was the homestead of Albert Neuman and Lulu Neuman. The deed was not acknowledged by Albert Neuman, and consequently is void, since, in order to convey a homestead in this state the instrument must be executed and acknowledged by both husband and wife. It appears, however, that, immediately upon the execution of the deed, the Neumans moved off from this land to another tract in the vicinity, and possession was taken by Roberts, under claim of title, in March, 1890. Roberts resided thereon with his family for 4 or 5 years. He then bought an adjoining tract, known as the Heckman claim, and moved there, but retained possession of the Neuman tract and fenced it in with 40 acres of the Heckman claim. There is evidence that Roberts cut hay upon this land and cultivated part of it, and that he exercised exclusive control and actual ownership over it during his lifetime, under claim of title. After Roberts' death, his widow and family continued to live upon the 200 acre tract, and, in 1900, deeds were executed by Caroline Roberts, the widow of Edward Roberts, and by all his children and heirs to Ed Marunda. The evidence shows that Marunda took possession of the land under these deeds, and kept the same until his death, and that his widow continued his possession until the spring of 1903. The testimony is conflicting in regard to the condition of the fences around the Neuman and Heckman tracts, but there is sufficient evidence to support the conclusion of the district court that the acts of Roberts, of his widow and heirs after his death, and of Marunda in relation to the occupancy and possession of such land, were sufficient to constitute a notorious, exclusive, adverse and continuous possession, under claim of title, as against all the

world, during the period from March, 1890, until after the death of Marunda in August, 1902. The void deed from Neuman and wife to Roberts, under which he took possession of the premises, was sufficient to constitute color of title. The statute of limitations began to run as soon as he took possession of the premises under this deed. His subsequent removal to the Heckman 40 acres adjoining this tract did not stop the running of the statute, because he kept continuous adverse possession of the Neuman land, nor did his subsequent death, since his widow and heirs continued to hold under his claim of title. It would seem that the bar of the statute was complete in favor of the heirs of Roberts before the deed to Marunda, but Marunda's possession being derived under the title of Roberts continued the adverse possession. The Roberts' title by prescription had fully ripened into a perfect title before the beginning of the foreclosure suit, and before the execution of the quitclaim deed from Neuman to Montague, under which Montague claims the title to the surplus.

A number of the objections made in the brief of the plaintiff in error are not available to Montague with reference to the title of Ed Marunda, for the reason that, under the testimony, the bar of the statute was complete as against Neuman and Montague, while the title was still in the heirs of Roberts. Since neither Neuman, nor his grantee, Montague, had any title to the land at that time, or at the time Marunda took it, they have no standing in court to complain as to technical defects in the conveyances from Roberts' widow and heirs to Marunda.

It is further urged that, under the authority of *Zweibel v. Myers*, 69 Neb. 294, the possession of the widow and heirs of Roberts can not be tacked to the possession of Roberts, in order to continue the running of the statute of limitations. There is no doubt of the correctness of the rule laid down in the syllabus of that case, that privity must be shown between adverse claimants, before the possession of one can be tacked to the possession of the

other, for the purpose of completing title by prescription. But the plaintiff in error asserts that, under the holding of the opinion in that case, there can be no privity of possession unless by direct grant or devise. While it is possible that the language of the opinion may be so construed, we do not think that it was intended to hold, in that case, that there can be no privity of possession between ancestor and heirs without a specific grant. It is essential that each occupant must show a derivative title from his predecessor, in order to link his possession with that taken under the original entry, but the possession of the heir is regarded as a continuance of that of the ancestor on account of his privity of blood. Bliss, Code Pleading (3d ed.), sec. 235; *Leonard v. Leonard,* 7 Allen (Mass.), 277; *Rowland v. Williams,* 23 Ore. 515, 32 Pac. 402; *Low v. Schaffer,* 24 Ore. 239, 33 Pac. 678; *Witt v. St. Paul & N. P. R. Co.,* 38 Minn. 122, 35 N. W. 862; *Haynes v. Boardman,* 119 Mass. 414. Where the widow and heirs continue to hold possession acquired by the ancestor under the same claim of title, there is such a privity between them that the ouster and disseisin begun by the ancestor is continued by them, and relates back to his original entry. In the *Zweibel* case, the facts did not show such a continuous possession, under claim of title made by the heirs, and the language must be construed with reference to the facts in that case.

A number of other objections to the decree of the court are urged in the brief of the plaintiff in error, but, under the view which was taken by the trial court of the evidence in the case, with which we agree, they can not be urged by Montague, since, if he had no title to the surplus, he can not complain of the manner of its distribution.

Upon a consideration of the whole record, we are of the opinion that the judgment of the district court was right and that it should be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.