LINCOLN JOINT STOCK LAND BANK, APPELLEE, V. PLATTE
VALLEY PUBLIC POWER AND IRRIGATION DISTRICT,
APPELLANT.
299 N. W. 485

FILED JULY 29, 1941. No. 31055.

*Shuman & Overcash,* for appellant.

*Halligan, McIntosh & Feltz, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,
CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This is an action to recover for damages sustained to
growing crops as a result of seepage alleged to have been
caused by water from the defendant's supply canal. Plain-
tiff recovered a judgment for $598.82, and defendant ap-
peals.

Plaintiff was the owner, during the times herein men-
tioned, of two tracts of land lying south of the North Platte
river in Keith county. For convenience, the east tract will
be referred to as the Lute land and the west tract as the
Snyder land. The lands alleged to have been seeped by
defendant's supply canal are approximately one-half mile
south of the North Platte river. Both seeped areas lie
immediately south of the Union Pacific railroad which runs
along the south side of the valley until it enters the Snyder
land, where it turns north and crosses the North Platte
river. A short distance south of the Union Pacific railroad

where it crosses the Lute land is an old railroad grade referred to in the evidence as the old Burlington grade. Commencing at a point just north of the Union Pacific railroad as it enters the Snyder land is the beginning of a drainage ditch which parallels the Union Pacific railroad on the north side thereof. This drain is referred to in the evidence as Bull ditch. The Keith-Lincoln county canal crosses the Snyder and Lute -lands approximately one-half mile south of the seeped lands here in question. This canal provides irrigation water for the Snyder and Lute lands as well as the lands lying between these two tracts.

With these conditions existing, the defendant constructed a canal about one-half mile to the south of the Keith-Lincoln county canal. This canal was about 40 feet wide at the bottom and 60 feet in width at the top. It was used for the first time in 1935, but ran only a small head of water. Water ran in the canal in 1936 and until February, 1937, when a break in defendant's siphon across the South Platte river occurred and prevented its further use for some time. Damages to crops were claimed for the years 1937 and 1938.

There is evidence in the record that defendant's canal crosses several sand draws. Plaintiff did not show that these sand draws were carrying subterranean waters in the general direction of his seeped lands. An engineer called by the defendant testifies that borings made by him below defendant's canal showed that the earth was dry 15 feet below the surface.

It cannot be questioned that plaintiff's lands are seeped and water-logged. There is evidence in the record that they have always been so low that they have at times become wet. One witness testifies that he had been duck-hunting on these lands many times before defendant's canal was built. There is evidence that Bull ditch was constructed to carry away the waters causing this water-logged condition, and that because of a failure to clean Bull ditch, it had filled up with weeds and slime and failed to operate as a drainage ditch. In the opinion of the defendant's en-

gineer, this condition was a contributing factor to the existing condition. The evidence shows that the grade of the irrigable land immediately to the south of the seeped lands was rather steep, so much so that it was difficult to irrigate successfully and that much tail water ran down onto the seeped areas and contributed to the ponding of waters there. It also appears that irrigation from the Keith-Lincoln county canal has been supplemented by pump irrigation which contributes to the impounding of waters on plaintiff's lands. There is also evidence of a drainage ditch being constructed a mile and a half east of the Lute land, known as the Sarben drain. Statistics were offered which indicate that the flow of drainage water in the Sarben drain was not influenced by the flow of water in defendant's supply canal. Records made by defendant's engineer, and not impeached by the record, indicate that the water-table in and around the seeped area is highest when water is running in the Keith-Lincoln county canal.

That natural conditions have contributed to the seepage on plaintiff's lands cannot be disputed. The involved lands are naturally low and are generally referred to as first bottom lands. The evidence shows that they are underlayed with a hard clay formation not conducive to absorbing waters above it, which contributes to the seeped condition and makes drainage necessary. The old Burlington grade has also settled and packed until subterranean waters percolating toward the river have been held back by it and added to the seeped waters accumulated on the Lute land. The slope of the land immediately south causes much surface drainage to be cast down upon plaintiff's lands. This, added to the tail waters derived from the application of canal and pumped water for irrigation, adds to the accumulation of subterranean water. There is evidence in the record that subterranean flow from the river percolates into the area of plaintiff's seeped lands from the west during flood seasons, due to the fact that this area was once a channel of the river. All of this evidence tends to establish that there are causes for the seeped condition of

plaintiff's land other than the alleged seepage from defendant's supply canal. Under these circumstances, it is necessary for plaintiff to establish a causal connection between any seepage from defendant's supply canal and the seeped condition of plaintiff's lands. The mere fact that the ditch was built about the time the seepage is alleged to have manifested itself is not sufficient where other efficient and probable causes are shown by the evidence. That seepage from defendant's canal was the cause of the seeped condition of plaintiff's lands must be shown by sufficient evidence to take it out of the realm of speculation and conjecture before a judgment for damages can be sustained.

In *Joldersma v. Muskegon Development Co.*, 286 Mich. 520, 282 N. W. 229, the court, in a case similar in principle, said: "It was incumbent upon plaintiffs to establish by some means a relationship between the contents of defendant's sump and their damage. The burden of proof was not met, in view of all the circumstances, by a simple showing that defendant permitted salt water to seep into the ground and that salt appeared at a distance of several hundred feet to the south. It was their burden to establish this relationship, not by a guess of the jury, but by the production of some competent testimony."

In *Enders v. Sinclair Refining Co.*, 220 Wis. 254, 263 N. W. 568, the court said: "It is considered that the evidence in this case, instead of eliminating the possibility of contamination from other sources, is such as to establish quite satisfactorily the fact that pollution comes from other sources rather than from the defendant's bulk-station plant. The trial court apparently rejected the percolation theory, and rested the case entirely upon the proposition of a crevice which connected the two places. Whether or not there is such a crevice and whether or not it connects the two premises is purely a matter of speculation and conjecture. The only test that could be made was made and it tended to disprove rather than establish the plaintiffs' case. It cannot be said that plaintiffs have by a fair preponderance of the evidence established the fact upon which

they rely for recovery in this case. The plaintiffs recognize the principle that proof which merely leaves the matter to be established in the realm of speculation and conjecture is not sufficient, and rely upon the case of *Pfister & Vogel Leather Co. v. Industrial Commission,* 194 Wis. 131, 215 N. W. 815, to sustain their position in that regard."

And in *Wynn v. Wilson,* 252 Ky. 352, 67 S. W. (2d) 483, the court said: "Under the evidence it is just as probable that the oil or water came from another source as from the abandoned well, thus presenting a case where all that the jury could do was to indulge in surmise or speculation. Where that is the case the evidence is not sufficient to take the case to the jury, and appellant's motion for a peremptory instruction as to the injury to the spring should have been sustained."

In the case before us there is no proof of actual loss from defendant's supply canal or any showing of the direction of any underground flow immediately below the canal. There is evidence of other sources of seepage contributing to or causing the damage. Under these circumstances, the defendant's motion for a directed verdict should have been sustained.

For the reasons herein stated, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.