FRANK L. ROBINSON, APPELLEE, V. DAWSON COUNTY IRRIGATION COMPANY ET AL., APPELLANTS.

8 N. W. (2d) 179

FILED FEBRUARY 5, 1943. No. 31444.

Lyman M. Stuckey, W. A. Stewart, Jr., and H. L. Blackledge, for appellants.

*Dryden, Dryden & Jensen, contra.*

Heard before SIMMONS, C. J., EBERLY, CARTER, MESS-MORE and YEAGER, JJ.

CARTER, J.

This suit was instituted against the Dawson County Irrigation Company and the Elmcreek Ditch Company to obtain injunctional relief and to recover a judgment for damages in the sum of $6,026. Plaintiff waived his alleged right to an injunction against both defendants and the case then proceeded as one for damages before a jury. The jury returned a verdict for $3,125 and judgment was entered against the defendants for this amount. Defendants appeal.

Plaintiff filed his petition on January 31, 1941, alleging that he was the owner of 340 acres of land in Buffalo county lying within the Kearney Mutual Irrigation Company, hereinafter referred to as the "irrigation company." By virtue of his lands lying within the irrigation district, plaintiff entered into a contract with the Central Power Company with reference to the delivery and use of irrigation waters from the Central Power Company canal, said Central Power Company being the owner of an appropriation of the waters of the Platte river with a priority date of September 10, 1882. It is further alleged that on December 26, 1935, the irrigation company entered into a contract with the Platte Valley Public Power and Irrigation District whereby the latter was to deliver certain storage water for irrigation purposes to the irrigation company for the use of plaintiff and others similarly situated. The petition then alleges that the Dawson County Irrigation Company procured a restraining order restraining the officers of the state having supervision of the distribution of the natural flow of the waters of the Platte river in accordance with priority rights and of certain storage waters being carried in the river channel pursuant to the irrigation district's contract with the Platte Valley Public Power and Irrigation District, from interfering with the taking of said water by

the Dawson County Irrigation Company. Thereupon said water was taken by the Dawson County Irrigation Company and the Elmcreek Ditch Company. The petition alleges that the water so taken belonged to the plaintiff and other irrigators similarly situated within the irrigation district and that such taking was tortious and wrongful. Plaintiff claims damages for injuries to his growing crops resulting from the failure to get that water to which he was entitled that was wrongfully taken by the defendant irrigation companies.

The plaintiff having waived his claim to injunctive relief, the only question for our determination is the correctness of the judgment in the amount of $3,125 for damages alleged to have resulted from the unlawful taking of plaintiff's water during July and August, 1940.

The record shows that the Central Power Company is the legal holder and owner of an appropriation of the waters of the Platte river for 140 second-feet for power purposes and 22 second-feet for irrigation purposes with a priority date of September 10, 1882. The defendants also have appropriations of water in the Platte river for irrigation purposes junior to the rights of the Central Power Company. Plaintiff's right to irrigation water from the natural flow of the Platte river stems from the appropriation held by the Central Power Company.

The record further discloses that on July 4, 1940, the department of roads and irrigation officially notified the Dawson County Irrigation Company that it was then entitled to no part of the natural flow of the Platte river and forbade any diversions from the river other than 125 second-feet of storage water to which it was entitled. Thereupon the Dawson County Irrigation Company filed its petition in the district court for Dawson county, praying for an injunction against A. C. Tilley, Robert H. Willis and A. H. Hamilton, setting forth their capacities as officers of the department of roads and irrigation, and other defendants, in which it was alleged that the Dawson County Irrigation Company had an appropriation from the natural flow of the river;

that there was no appropriator of natural flow on the river below its headgate having an appropriation senior to it in point of time except the Central Power Company; that the headgate of the Central Power Company was approximately 35 miles below the headgate of the Dawson County Irrigation Company; that the bed of the river was approximately a mile wide with a dry bed of sand of great depth at the time the petition was filed; that the only reason for ordering the Dawson County Irrigation Company to refrain from taking natural flow waters from the river was to further an attempt to deliver water at the headgate of the Central Power Company, an appropriator senior to it in point of time; that any quantity of water less than 1,000 second-feet flowing in the river at the headgate of the Dawson County Irrigation Company will not reach the headgate of the Central Power Company in usable quantities, but will sink away and be lost in the sand bed of the river and by evaporation, and will be of no beneficial use to any person; that at the time of filing the petition there were but 100 second-feet of water at the headgate of the Dawson County Irrigation Company, that it would be utterly impossible for any of the flow of the river to reach the headgate of the Central Power Company and to deprive the Dawson County Irrigation Company of the water would be to waste said water and cause the same to be of no beneficial use to any one.

On July 5, 1940, a restraining order was issued enjoining the officials of the department of roads and irrigation from in any manner interfering with the headgates of the Dawson County Irrigation Company and from interfering with the diversion of waters flowing in the Platte river into the canal of said defendant irrigation company.

On July 23, 1940, a petition in intervention was filed by the Central Power Company, Walter Sheen, Frank Robinson, O. L. Erickson, A. C. Wittera and H. W. Kendall, in which the rights of the Central Power Company in the natural flow of the river are set forth and the further allegation that interveners, other than the Central Power Com-

pany, are owners of land which is irrigable and is being irrigated from waters contained in the appropriation of the Central Power Company and are beneficial owners of that part of the water right of the Central Power Company which was granted for irrigation purposes. The petition in intervention denies generally the allegations of the petition, alleges the ownership of their lands subject to irrigation, the nature of the crops growing thereon, and the immediate necessity for irrigation water to be used in maturing the crop. The good faith of the Dawson County Irrigation Company is challenged and the results of the action taken by it are alleged to wrongfully deprive the interveners of their prior rights and to subject them to irreparable damage. Interveners asked that the prayer of the petition be denied, that the restraining order and temporary injunction be dissolved, and for such other relief as may be just and equitable. The defendant officers of the department of roads and irrigation filed their answers alleging the correctness of their closing order of July 4, 1940, and praying for a denial of the relief sought by the Dawson County Irrigation Company. On March 10, 1941, the Dawson County Irrigation Company, as its separate answer to the petition in intervention and as reply to the answer of the officers of the department of roads and irrigation, filed its general denial.

On March 10, 1941, the case was tried and a decree generally in favor of the Dawson County Irrigation Company and against the defendants and interveners was entered, in which the following pertinent findings were made: That on July 5, 1940, there was no available water in the Platte river that could be delivered at the Central Power Company's headgate, and that no water could be so delivered prior to July 10, 1940. That on July 11, 12, 13, 14 and 15, 1940, as a result of a heavy rain, the Central Power Company received the full amount of its appropriation from the natural flow of the river. That after July 15, 1940, no water could be delivered to the headgate of the Central Power Company in usable quantities for the reasons stated

in the petition of the Dawson County Irrigation Company. The injunction was thereupon made permanent as against the officers of the department of roads and irrigation and the petition in intervention dismissed. This decree was never modified or appealed from and remains in all respects final.

From this statement of the issues and of the matters adjudicated in the foregoing case, it is apparent that the rights of the Dawson County Irrigation Company and the Central Power Company to the natural flow of the river were conclusively settled. It having been decided that the Central Power Company had no rights in the water as against the Dawson County Irrigation Company, and the decree having become final, the doctrine of *res adjudicata* is applicable and the Central Power Company, and those in privity with it, are estopped from asserting any rights to the natural flow of the river during the period covered by the decree in the former case.

The former case was decided under the following applicable principles of irrigation law:

"An action lies to establish and protect the company's water rights or enjoin the unlawful diversion of its supply of water, and such a suit may be brought by the company without joining its stockholders or consumers as parties." 67 C. J. 1386. See, also, *Montrose Canal Co. v. Loutsenhizer Ditch Co.*, 23 Colo. 233, 48 Pac. 532; *Thorpe v. Tenem Ditch Co.*, 1 Wash. 566, 20 Pac. 588.

"A ditch company may maintain an action to protect the rights of the consumers of water through its ditch, and it is not necessary to join such consumers with the ditch company as parties plaintiff in an action for that purpose." *Town of Sterling v. Pawnee Ditch Extension Co.*, 42 Colo. 421, 431, 94 Pac. 339. See, also, 5 Bancroft, Code Pleading, 4465, sec. 2431; *Farmers Independent Ditch Co. v. Agricultural Ditch Co.*, 22 Colo. 513, 45 Pac. 444.

"A senior appropriator is entitled to water as against an upstream junior appropriator as long as water in usable quantities can be delivered to him." *State v. Cochran*, 138 Neb. 163, 292 N. W. 239.

"Junior appropriators may use available water within the limits of their appropriation so long as the rights of senior appropriators are not injured or damaged." *State v. Cochran, supra.*

"Where all the available water passing a certain point on the stream would not, if not diverted or interrupted, reach a senior appropriator downstream, junior appropriators may lawfully divert water within the limits of their appropriations, and such diversions are not in law out of priority diversions." *State v. Cochran, supra.*

In the light of these principles, the Dawson county district court determined the diversion of irrigation waters by Dawson County Irrigation Company, between the 1st day of July, 1940, and the last day of August of that year, on the merits, and adjudged the same to be lawful; that the Dawson County Irrigation Company was entitled to the water it thus received. This is the legal effect of its judgment entered. It had jurisdiction of the parties litigant, of the causes of action, and of the subject-matter to which they related.

In 34 C. J. 750, it is stated: "A judgment rendered by a court of competent jurisdiction on the merits is a bar to any future suit between the same parties or their privies, upon the same cause of action, in the same or another court, so long as it remains unreversed and not in any way vacated or annulled." See, also, *Allaire, Woodward & Co. v. Perfection Remedy Co.,* 100 Neb. 726, 161 N. W. 250; *Slimmer v. Hoffman,* 100 Neb. 330, 160 N. W. 103; *Trainor v. Maverick Loan & Trust Co.,* 92 Neb. 821, 139 N. W. 666; *Triska v. Miller,* 86 Neb. 503, 125 N. W. 1070.

There can be no question that the doctrine of *res adjudicata* would apply as against the Central Power Company. Plaintiff appears in the former suit as an intervener, but he claims he never authorized the use of his name as such and that he had no knowledge that he was designated as an intervener until after the petition in intervention had been filed. The attorney purporting to represent plaintiff testified that he counseled with a group of farmers owning land

irrigated by the natural flow of the river by virtue of the Central Power Company's appropriation and assumed that plaintiff was to be joined as an intervener. Whether or not the attorney was specifically employed to represent plaintiff presents a question of fact upon which the evidence is somewhat conflicting. In view of the fact that the record shows that plaintiff caused a dismissal to be prepared and forwarded to the clerk of the district court for filing upon the discovery of his inclusion as an intervener, and before the former case was tried, and which was not filed at the direction of the district judge for some unaccountable reason not disclosed by the record, coupled with the fact that plaintiff made no appearance at the trial of the case or otherwise, except as herein shown, we are of the opinion that the doctrine of *res adjudicata* does not apply to him because of his inclusion as an intervener in the petition in intervention. But as to any right he may have had in the natural flow of the river, we think plaintiff is estopped by the former judgment for the reason that he is in privity with the Central Power Company as to the natural flow water to which he is entitled by virtue of his obtaining his appropriative right through that of the Central Power Company, a party to the former suit. This conclusion rests on the fact that plaintiff is in privity with the Central Power Company as to any right he may have had to the natural flow of the river and not upon the fact that his name appears as an intervener in the former suit.

The judgment in the former case appears to have made no distinction between the natural flow and storage waters then flowing in the river. The instructions given by the court specifically inform the jury that, if they find that the defendants wrongfully converted the natural flow of the river and, as a result thereof, the Kearney Mutual Irrigation Company did not receive its 22 second-feet of such water at the time it would have arrived at the headgate of its ditch, they were to find for the plaintiff in the amount in which the use of such water by the defendants contributed to plaintiff's damage. This is a manifest error in view

of the fact that it had been previously adjudicated that the Dawson County Irrigation Company was entitled to the natural flow in the river at the time and that the Central Power Company, with whom plaintiff is in privity had no rights thereto. On the other hand, the Central Power Company had no interest in the contract of the Kearney Mutual Irrigation Company with the Platte Valley Public Power and Irrigation District for storage water and its participation in the former suit could in no way estop the plaintiff from maintaining the present action based on the wrongful conversion of storage waters belonging to plaintiff then being delivered for the beneficial use of the plaintiff, and others similarly situated.

It is urged, however, that the action for damages is incidental only to the equitable suit for an injunction and that the verdict of the jury is therefore advisory only to the trial judge. If this be true, it is contended that errors in the instructions do not constitute prejudicial error, as it will be assumed that such matters will be taken into consideration by the trial judge before a final judgment is entered. These contentions require an examination of the nature of the action and the procedure followed in obtaining the judgment from which this appeal was taken.

The suit was commenced to obtain an injunction and to recover a judgment for damages resulting from the wrongful conversion of waters to which plaintiff was entitled, the prayer of the petition being as follows: "Wherefore plaintiff prays for an order of this court restraining and enjoining the defendants herein and each of them from appropriating or converting to their own use any water from the Platte river and its tributaries under the rights of the Central Power Company, either as natural flow water, or storage water from the Sutherland Dam, that further the defendants and each of them be enjoined and restrained from interfering with the rights of the plaintiff to said water in every particular until the water appropriation belonging to the Central Power Company, or its successors, and the rights incident thereto to plaintiff have been satisfied.

That further upon hearing the court find that plaintiff is entitled to recover the sum of $6,026 from the defendants and for such other and further relief as is just and equitable in the premises."

We think the case is one in which a court of equity could properly take jurisdiction, and jurisdiction once having been taken, the case will be retained for the adjudication of all issues. No objection was made to the court's calling of a jury. The mere fact that the trial court failed to grant an injunction does not deprive such court from hearing the prayer for damages for the injuries suffered. The verdict of the jury must, therefore, be treated as advisory in character and the presumption follows that any errors in the submission of the case to the jury were considered by the trial court before judgment was entered. Prejudicial error in the instructions to a jury called in an advisory capacity cannot be successfully asserted. We hold therefore that reversible error in the instructions in the present case could not be successfully assigned in view of the fact that the verdict of the jury was advisory only.

We are of the opinion, however, that the judgment of the court is not sustained by the evidence. The evidence adduced at the trial makes no distinction between natural flow and storage waters. Defendants are liable only for the conversion of the storage water, if they are liable at all. The damages sustained by the conversion of storage water cannot be separated in the evidence produced at the trial. We are therefore unable to say that the judgment of $3,125 is sustained by the evidence in the record.

Other assignments of error will not be discussed in view of the conclusion we have reached. We think that the case must be reversed and the cause remanded for a new trial on the question of the wrongful conversion of the storage water in which plaintiff had a beneficial use and the resulting damages, if any, sustained by the plaintiff.

REVERSED.

EBERLY, J., not participating.