MILTON H. WEBB, APPELLEE, V. PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT.

18 N. W. 2d 563

FILED MAY 4, 1945.  No. 31891.

*Beeler, Crosby & Baskins,* for appellant.

*Dryden & Jensen,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

Plaintiff brought this action to recover for damages to growing crops, improvements, and other personal property by surface floodwaters, alleged to have been wrongfully cast upon his land by defendant's irrigation canal. A jury awarded plaintiff a verdict for $1,000 upon which the trial court entered judgment. Motion for new trial was overruled and defendant appealed, contending that the court erred in refusing to sustain defendant's motion for directed verdict at the conclusion of plaintiff's case, in giving and failing to give certain instructions, and in refusing to give defendant's requested instructions. It is also claimed that the verdict is contrary to and not sustained by the law and the evidence. We find that these assignments of error cannot be sustained.

As we view it, the evidence becomes of primary importance to a decision of the case. The record discloses without dispute that plaintiff is a farmer who owns and farms certain land northeast of Odessa in Buffalo County, Nebraska. Defendant is a public power and irrigation district, organized and operating under the statutes of this state (Ch. 70, art. 6, R. S. 1943). As such it operates and maintains an irrigation canal which runs along the south side of plaintiff's land. A natural surface drainway or draw, forked at its upper northern source, crosses plaintiff's land from the north toward the south just east of his improvements. Before construction of the canal this draw carried runoff or excess surface waters from plaintiff's land toward the south to the Platte river. After the canal was constructed the draw emptied such waters into the canal.

Some distance west of plaintiff's land are three other natural surface water drainways or draws located on the lands of others. They come out of the hills northwest thereof and carry runoff or excess surface waters from the lands of others north and west of plaintiff. Before construction of the canal they carried all such waters south and west to the Platte river. After construction of the canal such waters all emptied into the canal and were thus ordinarily carried down past plaintiff's land. However, if the canal was full and these waters could not all get into the canal they of necessity were forced back to the north out of the canal, and if sufficient in volume would come down along the north bank thereof and thence east upon and over plaintiff's land.

There is competent evidence that no dredging or repair work had been done on the canal for many years. Further, three or four feet of sand had washed into the canal from the river, and the banks of the canal were in bad shape, thin in places from sloughing off and caving in, all of which filled in the bottom of the canal and thereby limited its carrying capacity. A concrete wall originally set at the edge of the bank east of plaintiff, then stood eight or ten feet out in the canal. Trees had grown in the sides and in the bottom of the canal, some of which had fallen over or leaned over thereby catching debris, slowing up and diverting the flow of its waters. There had been breaks in the canal, prior to the trouble presently involved, but no steps had been taken to increase its capacity or put in spillways to drain such flood waters out of the canal to the south. There is evidence that this is not a proper method or manner of operating and maintaining the canal.

It also appears in the evidence that on June 13, 1943, at about 4:30 p. m. rain began falling upon plaintiff's premises. Further, just previous to that time the canal was carrying approximately half its capacity of clear river water. It rained for about an hour and a half, not exceedingly hard, and with a measured volume of 1.95 inches. Thereafter the excess surface waters from this rain drained over plaintiff's land into his draw and out into the canal

without any damage by flooding. However, a heavier rain fell to the north and west of plaintiff upon other lands, and about 6:30 or 7:00 p. m. floodwaters began coming from the west along the north bank of and outside the canal down upon plaintiff's land, inundating his improvements and growing crops. These surface waters had piled up from the north and west against the canal which was then filled with water. They backed up from the canal, flooded out to the north, and thence east upon plaintiff's property with such force as to take his fences into his draw toward the east. Floodwaters also flowed clear over the top of the north bank of the canal due south of plaintiff's house. The south bank of the canal eventually broke east of plaintiff and hastened the runoff of the floodwaters toward the south. However, the plaintiff's crops and buildings were flooded for approximately twelve hours and suffered substantial damages therefrom.

The original grant of right of way for the canal which plaintiff concedes is binding upon him, provides, in substance, that defendant has the right to flow water over plaintiff's land by the construction of a canal, without a north bank across the draws and ravines; and with the right to waste surplus water out of the canal into any of such draws, ravines and depressions. That plaintiff and defendant are both bound thereby, and entitled to the benefits and subject to the burdens incident to the exercise of such rights, cannot be questioned.

It is the contention of defendant that by virtue of this grant plaintiff has waived, or is estopped from claiming, damages to his crops or property from the overflow or wastage of waters over and upon his land unless such damages are shown to have been the result of negligence in the operation and maintenance of the canal. In this connection to avoid liability defendant argues that there is no evidence of overflow except in plaintiff's draw, as permitted by the grant, and that there is no evidence that defendant was negligent in the operation and maintenance of its canal, which we find has no support in the record.

The evidence is that excess surface waters from plaintiff's land had already drained out from his draw into the canal of defendant, after the rain upon plaintiff's land had ceased, without any damage to him from flooding. Further, that plaintiff's land never floods by waste waters alone flowing back out of the canal; that it is physically impossible for such waste waters to flow out into the draw from the canal and raise the water high enough to flood plaintiff's other land where the damages occurred. Plaintiff makes no claim that any of his damages accrued in any such manner. The evidence is clear that it did not do so. There is no evidence in this record which could sustain a finding that any of plaintiff's claimed damages proximately resulted from wasting surplus water out of the canal into the draw on plaintiff's land. Rather there is competent evidence that there was an overflow on the north canal bank and that a volume of accumulated and collected surface waters flooded down on plaintiff's land from the west to his damage, which would never have reached his land but for the acts of defendant and the intervention of its canal.

The draws involved are all conceded to be natural drainways. It was held in *Leaders v. Sarpy County,* 134 Neb. 817, 279 N. W. 809, quoting from *Crummel v. Nemaha County,* 118 Neb. 355, 224 N. W. 864: "It is the duty of those who build structures across natural drainways to provide for the natural passage through such obstructions of all waters which may be reasonably anticipated to drain there, and this is a continuing duty." See, also, 27 R. C. L., sec. 77, p. 1148; 67 C. J., sec. 291, p. 868. It was only recently held in *Hengelfelt v. Ehrmann,* 141 Neb. 322, 3 N. W. 2d 576, "A proprietor may not collect surface waters on his estate into a ditch or drain and discharge them in a volume on the lands of his neighbor, nor can he divert them so they go in a direction different from the natural flow."

The original grant of right of way never contemplated that defendant should be relieved from liability if it flooded plaintiff's land, either by negligence or overflow, other than that confined in his draws, ravines, or depressions. The

rule is that, "After an easement to drain across the lands of another has been legally acquired it is limited both as to extent and nature to the terms of the original grant." 27 R. C. L., sec. 84, p. 1162.

We find also no basis either in law or fact for exempting or relieving defendant from liability by reason of any claimed prescriptive rights. As stated in 30 Am. Jur., sec. ·57, p. 640, "A party cannot gain a prescriptive right to be negligent; hence, the fact that a ditch company has maintained its ditch in the same negligent manner for several years gives it no right to continue to use it negligently to the injury of another." We conclude, therefore, that the contention made by defendant cannot be sustained.

Defendant's second contention, as stated in the brief, is that, "In an action for damages to crop and other personal property which are alleged to have been sustained as the result of the diversion of surface flood waters, when it is shown that said crop and property were, at the same time, subject to flood waters from other sources, either alone or commingling with surface flood waters so shown to have been wrongfully diverted, it is incumbent upon the plaintiff to allocate the damages arising from each of said sources, and in the absence of competent proof of such allocation, judgment cannot be sustained." In support thereof defendant relies upon several Nebraska cases: *Compton v. Elkhorn Valley Drainage District*, 124 Neb. 299, 246 N. W. 340; *Lincoln Joint Stock Land Bank v. Platte Valley Public Power and Irrigation District*, 140 Neb. 316, 299 N. W. 485; *Siebold v. Whipple*, 143 Neb.' 167, 9 N. W. 2d 154; *Robinson v. Dawson County Irrigation Co.*, 142 Neb. 811, 8 N. W. 2d 179.

It is insisted by defendant that plaintiff having failed by his proof to so allocate the damages, the trial court should have sustained defendant's motion to direct a verdict at the conclusion of plaintiff's evidence. Also, that the verdict awarded plaintiff and judgment thereon were the result of speculation and conjecture, not based upon competent evidence, and therefore cannot be sustained. The question here

is simply whether the authorities above cited have application under the facts presented. We find that they do not.

We have heretofore recited the evidence in substance, and are of the opinion it clearly demonstrates that defendant's canal forced surface floodwaters down to the east and upon plaintiff's land, which would never have reached it but for the intervention of defendant's canal, and that plaintiff's damages were caused by such floodwaters overflowing from defendant's canal and transferred upon his land by the canal and from no other source.

There is no evidence that any of plaintiff's damages resulted from excessive rainfall upon his land, or from surface water coming down through his draw, or by wasting surplus water out of the canal into the draw upon his land. In this situation the applicable rule is that, in an action for damages resulting from flooding of premises by a public power and irrigation district if the evidence shows that all the damages were caused by overflow and wrongfully diverted flood waters, without any commingling of damages by waters from other sources, then it is sufficient to sustain a verdict, and if no error appears in the proceedings a judgment thereon will be affirmed upon appeal. *Robinson v. Dawson County Irrigation Co.*, 145 Neb. 32, 15 N. W. 2d 231. We, therefore, decide that this contention cannot be sustained.

Complaint is also made that instruction No. 23 given by the trial court, which deals with the measure of damages, is erroneous, primarily because the jury were not instructed therein as to the necessity of the allocation of damages as between two alleged contributing causes. We have heretofore disposed of this contention by holding that under the evidence the question of allocation of damages was not presented as an issue in the case.

It is also contended that the instruction does not correctly state applicable rules of law as to the measure of damages. An examination discloses that the instruction was taken almost verbatim from *Hopper v. Elkhorn Valley Drainage District,* 108 Neb. 550, 188 N. W. 239, which has never been

overruled by this court. We can see no conflict between that case and *Snyder v. Platte Valley Public Power and Irrigation District,* 140 Neb. 897, 2 N. W. 2d 327; 144 Neb. 308, 13 N. W. 2d 160. See, also, *Gledhill v. State,* 123 Neb. 726, 243 N. W. 909, which is cited and discussed in the latter case. We find that plaintiff's evidence upon the question of damages was clear, certain, definite, and in conformity with every applicable rule of law. The instruction correctly stated the law and therefore could not in any manner have been prejudicial to defendant.

We have also examined instructions numbers 15, 17, 20, and 21, which defendant claims to have been erroneous. In the light of conclusions heretofore reached with regard to defendant's other contentions and the propositions of law discussed in connection therewith, which are all related, we observe no prejudicial error in these instructions and see no necessity of discussing them separately. We have also examined defendant's proffered instructions which the trial court refused. However, we find that they were substantially included in other instructions given by the court, and it cannot be said that they were erroneously refused.

It is also the contention of defendant that instruction No. 18 was erroneously given by the trial court. It stated to the jury substantially, so far as it is relevant to this discussion, that by the statutes of Nebraska a public power and irrigation district is liable for all overflow damage, and if they found from a preponderance of the evidence that plaintiff suffered damages to his crops and property by overflow from the canal, then plaintiff could recover therefor regardless of whether or not defendant negligently operated and maintained its canal, unless they found that such damages were caused by an act of God as defined by the court.

The instruction was undoubtedly based upon section 70-671, R. S. 1943, which is a part of defendant's enabling act. This section of the statute was examined and applied in *Luchsinger v. Loup River Public Power District,* 140 Neb. 179, 299 N. W. 549. See, also, *Applegate v. Platte Valley Public Power and Irrigation District,* 136 Neb. 280, 285 N.

W. 585. However, defendant makes no complaint of the instruction as an abstract proposition of law and we see no need to discuss that phase of it. It is argued, that there is no competent evidence of overflow of the canal upon plaintiff except into plaintiff's draw, and that the instruction assumes that there is such evidence. The instruction itself does not assume that there was such an overflow, but is predicated upon condition that the jury so find from a preponderance of the evidence. There is also competent evidence of overflow from the canal, both over the north bank and out of the drainways west of plaintiff. The evidence as adduced by defendant upon cross-examination is that the waters in the canal came clear over the top of the bank of the canal due south of plaintiff's house. As may be said of most instructions, alone it is not complete or perfect, but in view of the evidence appearing in this record, and all the other instructions given by the trial court, we are unable to find that instruction No. 18 could in any manner be conflicting, misleading, or prejudicial to defendant's rights. We have held that, "Where instructions as a whole correctly state the law applicable to the controverted issues, the verdict of the jury, if supported by sufficient evidence, will not be set aside because particular instructions considered separately contain mere informalities or omissions which are not misleading or confusing." *Gorman v. Bratka,* 139 Neb. 84, 296 N. W. 456. It is also the rule that, "Where instructions are not inconsistent or contradictory but, considered together, correctly state the law, the judgment will not be reversed because one does not state the entire law on the subject, unless it appear that the jury were misled." *Schram v. Lowden,* 144 Neb. 851, 15 N. W. 2d 42. These rules are applicable to the case at bar since there is competent evidence that plaintiff's damages were caused both by overflow and the wrongful diversion of surface waters from natural drainways, both aspects of which were properly presented to the jury by the court's instructions.

It is insisted by defendant that the nature of the flood waters drained from the immediate area upon the plaintiff's

land resulted from an unprecedented rainfall over a short period of time and in a confined area, in such a manner as to constitute an act of God, as a matter of law; and that the trial court erroneously submitted the question to the jury. The evidence is that it was not an unprecedented rain; that many other similar rains had occurred in the vicinity; and that defendant in the maintenance and operation of its canal could reasonably have anticipated that such rains would happen again. It was held in *Clark v. Cedar County,* 118 Neb. 465, 225 N. W. 235, that: "In order for a flood to come within the term 'act of God,' it must have been so extraordinary and unprecedented a manifestation of nature as could not have been reasonably anticipated or foreseen." It was held in *Fairbury Brick Co. v. Chicago, R. I. & P. R. Co.,* 79 Neb. 854, 113 N. W. 535: "Although a rainfall may be more than ordinary, yet, if it be such as has occasionally occurred at irregular intervals, it is to be foreseen that it may occur again; and a party engaged in a public work, the construction of which involves the change or restraint of the flow of water in a natural channel, is guilty of negligence if he fails to make reasonable provision for the consequences that will result from such extraordinary rainfalls as experience shows are likely to occur."

There can be no doubt under the evidence appearing in the case at bar that the question was for the jury to decide, rather than the court. We find that it was properly submitted to the jury, substantially as requested by defendant in its own proffered instructions.

An examination of all the instructions given by the trial court discloses that the issues presented were submitted to the jury in such manner as not to be prejudicial to any of defendant's rights. We find no error in the record and conclude that the verdict and judgment thereon are not only in conformity with the law but are amply supported by the evidence. Therefore, the judgment is affirmed.

AFFIRMED.