MARGARET A. MAUZY, ADMINISTRATRIX OF THE ESTATE OF HENRY MAUZY, DECEASED, APPELLEE, V. JESS N. ELLIOTT ET AL., APPELLEES, IMPLEADED WITH: ALBERT J. GODWIN, ADMINISTRATOR WITH WILL ANNEXED OF THE ESTATE OF ERMA V. ELLIOTT, DECEASED, APPELLANT.

22 N. W. 2d 142

FILED MARCH 1, 1946. No. 31984.

*Kennedy, Holland, DeLacy & Svoboda, D. O. Dwyer &
W. L. Dwyer,* and *Harry R. Henatsch,* for appellant.

*Walter H. Smith* and *Leon, White & Lipp,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE,
YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

This appeal involves primarily the distribution of moneys
representing the proceeds received from the sale of real
property in the foreclosure of a mortgage. Erma V. Elliott
owned an acreage near Plattsmouth. On February 1, 1938,
she mortgaged it to one Henry Mauzy. Her husband, Jess
N. Elliott, joined in the mortgage. Both the mortgagor and
the mortgagee were deceased before this litigation. On
March 19, 1943, plaintiff, as administratrix of the estate of
Henry Mauzy, filed suit to foreclose the mortgage, then in
default. Albert J. Godwin, administrator with the will an-
nexed of the estate of Erma V. Elliott, her husband, Jess N.
Elliott, her children, the devisees in her will, and their re-
spective spouses, together with Erna Lapidus and husband,
Joe Lapidus, who were alleged to claim some interest in the
property, were all made defendants. Defendant adminis-
trator answered plaintiff's petition alleging that as admin-
istrator he was entitled to receive any and all funds derived
from a sale of the land under foreclosure over and above an
amount sufficient to satisfy plaintiff's debt for the purpose
of paying claims allowed against the estate. He specifically
prayed for that relief, together with such other and further
relief as might be just and equitable.

Defendants, Lapidus, filed answer and cross-petition de-
nying generally but alleging that on March 16, 1942, they
went into possession of the property under a written lease
with Erma V. Elliott and Jess N. Elliott, her husband,
whereby Erna Lapidus, lessee, agreed with them in part as
follows: " * * * to pay * * * as rent * * * Three hundred
($300.00) Dollars, payable $100.00 at signing hereof, re-
ceipt of which is hereby acknowledged; $100.00 on or before
July 1, 1942 and $100.00 on or before November 1, 1942,

and as part of the consideration for said payments lessee has option to purchase said premises during the term of this lease for $4000.00, in which event rentals paid are to be applied on said purchase price, and in case of exercise of said option lessors are to furnish abstract showing title free and clear of all liens and incumbrances and to convey by warranty deed. In case said option is not exercised during term of this lease then lessee has option of renewal of this lease including said option for an additional year on said terms and conditions by written notice to lessors sixty days prior to March 1, 1943."

Cross-petitioners further alleged in substance that lessee exercised the option of renewal of the 1942 lease in the manner and within the time required, retained possession thereunder, and thereafter in 1943, having complied with the terms of the lease, exercised the option to purchase the property. Lessee reiterated in the cross-petition her previous exercise of the option to purchase and alleged that she was ready, willing, and able to perform as required. By reason thereof it was prayed that plaintiff's petition be dismissed, that specific performance be granted, and for such other and further relief as might be just and equitable.

Defendant administrator answered the cross-petition denying generally but admitting that cross-petitioners had been in possession of the property as tenants at all times when due in 1943. The court was asked to find that Erna Lapidus was holding over her term and had forfeited her right to enforce the option to purchase by reason of the fact that she had failed, neglected, and refused to pay the rent when due in 1943. The court was asked to find that Erna Lapidus had no further rights under the lease and also for such other and further relief as might be just and equitable. The cause was tried as if a general denial thereof had been filed.

On June 24, 1944, trial was had, the parties being present in person and by their respective attorneys. Counsel for the parties were given opportunity to file briefs and on November 25, 1944, the trial court entered a decree of fore-

closure finding and adjudging that the mortgage was valid, in default, and a first lien on the property in the sum of $2,050, with interest on the principal sum of $2,000 at nine percent from and after February 1, 1943. It was ordered if that sum was not paid to plaintiff within 20 days the property should be sold as upon execution, and the proceeds paid to the clerk of the district court to be retained and disbursed as thereafter ordered upon determination of the issues between the several defendants and Erna Lapidus, cross-petitioner, which issues were continued until further order of the court. There was no redemption as afforded and order of sale was issued December 16, 1944. Legal notice of sale was published and on January 22, 1945, the property was sold by the sheriff to Erna Lapidus for $5,500, which was paid to the clerk of the district court. On February 2, 1945, the sale was confirmed and deed ordered. With reference to all the proceedings heretofore recited there was and is no controversy and no appeal was taken therefrom.

This appeal involves only the supplemental decree of the trial court distributing the proceeds of the foreclosure sale. On February 2, 1945, the trial court entered a supplemental decree deciding the issues between the several defendants and cross-petitioner and distributing the proceeds then in the hands of the clerk of the district court. In that connection the court found generally that by reason of the lease, option for renewal, and purchase, together with timely exercise and acceptance thereof, Erna Lapidus was the equitable owner of all the right, title, interest, and equity of redemption of Erma V. Elliott, deceased, her heirs, devisees, administrators, and all persons claiming by or through any of them, except for the sum of $1152.96 which should be paid to defendant administrator for and on behalf of said estate and the heirs entitled thereto. The court also ordered that plaintiff should be paid costs in the sum of $141.54, together with $2,405.50, principal and interest due under the mortgage, and that Erna Lapidus should be paid her costs, together with $1,800 balance then remaining in

the hands of the clerk of the district court which included credit for $300 rentals paid by her in 1942.

Defendants, Jess N. Elliott and the administrator, thereafter filed motion for new trial which was overruled. Only the administrator has appealed contending substantially: (1) That the supplemental decree was void for want of jurisdiction; (2) that the trial court erred in finding that option to purchase was aptly exercised by lessee and in failing to find, in any event, that the option to purchase was forfeited by her failure to pay rentals in 1943; and (3) erred in finding that Erna Lapidus was entitled under the option if properly exercised in 1943 to credit for $300 paid as rent under the 1942 lease. We find that the latter contention has merit but that the other two cannot be sustained.

With reference to the first contention it is appellant's position that the cross-petition of defendants, Lapidus, prayed for specific performance of a contract to convey real estate made by a party deceased before conveyance and having been filed out of time the court lacked jurisdiction to enter any order that would be binding upon the heirs and devisees of Erma V. Elliott, deceased, because no publication was made as provided by section 30-902, R. S. 1943.

At the outset it should be recalled that in the first instance this action was not one for specific performance of such a contract. It was a suit by the administratrix of the mortgagee's estate to foreclose a real-estate mortgage, wherein the mortgagee had died without foreclosing the right of redemption, and all the interest in the mortgaged premises conveyed by the mortgagor, and the debt secured thereby, were personal assets in the hands of the administratrix which she had a legal right to foreclose in the district court, as provided by section 30-411, R. S. 1943.

We must bear in mind that the administrator of the mortgagor's estate, Jess N. Elliott, her husband, together with her heirs, the devisees under the mortgagor's will, and the defendants, Lapidus, who were alleged to claim some interest in the property, were all made parties in the fore-

closure action and there is no contention that they were not properly served therein. The record which imports verity shows that at the trial of the issues all of the parties were present in person and by their respective attorneys. The husband, Jess N. Elliott, one of the heirs, and the defendant administrator all testified as witnesses controverting the issues at the hearing on the merits. Without objection the defendant administrator who represented the estate filed an answer to both plaintiff's petition and defendants' cross-petition.

In such a situation after foreclosure without redemption, a sale of the property, and confirmation thereof, the execution of the sheriff's deed vested in the purchaser the same estate that would have vested in the mortgagee if the equity of redemption had been foreclosed and no other or greater and operated as a bar against the mortgagor, the mortgagee, and all parties to the suit in which the decree for such sale was made, and against their heirs respectively and all persons claiming under such heirs, as provided by section 25-2145, R. S. 1943. There remained then thereafter for disposition only the proceeds of the sale as required by section 25-2146, R. S. 1943. That section provides: "The proceeds of every sale made under a decree in equity shall be applied to the discharge of the debt adjudged by such court to be due, and of the costs awarded, and if there be any surplus, it shall be brought into court for the use of the defendant, or of the persons entitled thereto, subject to the order of the court."

In Montague v. Marunda, 71 Neb. 805, 99 N. W. 653, this court in construing a statute, identical with section 25-2146, *supra*, held: "Upon the foreclosure of a mortgage, and a sale and confirmation thereunder, if a surplus remains after the payment of the mortgage debt and costs, the district court, in its equitable jurisdiction, has full power, upon an application being made for a distribution of the surplus, to bring in all parties necessary to a determination of the ownership of the fund, and to try and determine that question."

In that opinion it was said: "All persons who claimed to

have any interest in the surplus being before the court, it was within its power, as it was its duty, to retain the cause for all purposes necessary to determine the matters still pending, and to do complete and final justice between the parties. To voluntarily relinquish its jurisdiction over the fund, which was in its possession, would be to surrender one of the most beneficial powers of a court of chancery. The fund being in the hands of the court, it was its duty to ascertain to whom it belonged, and not to relegate the parties to another court for that purpose."

As late as Gibson v. Koutsky-Brennan-Vana Co., 143 Neb. 326, 9 N. W. 2d 298, this court said: "It is a long-established rule that a court of equity which has obtained jurisdiction for any purpose will retain jurisdiction for the purpose of administering complete relief between the parties with respect to the subject-matter. Parson Construction Co. v. Gifford, 129 Neb. 617, 262 N. W. 508; Robinson v. Dawson County Irrigation Co., 142 Neb. 811, 8 N. W. (2d) 179. A prayer for general relief in an equity action is as broad as the pleadings and the equitable powers of the court. Olson v. Lamb, 61 Neb. 484, 85 N. W. 397; 21 C. J. 679." See, also, Miller v. Knight, *ante* p. 207, 19 N. W. 2d 153.

Under the circumstances and by virtue of the authorities heretofore cited, we are of the opinion that the trial court had jurisdiction to foreclose the mortgage and thereafter distribute the proceeds of the sale, as it did.

The appellant's second contention that defendant lessee did not exercise the option to purchase or that if she did her rights thereunder were forfeited depends upon the factual situation. Although the administrator contended in the trial court that the options in the lease were invalid from the beginning he has, we believe, abandoned that position in this appeal. Whatever his position is in that regard the record discloses that the lease as made in 1942 was valid and binding on the parties. It cannot be disputed that it was validly executed in writing, delivered on March 16, 1942, and filed of record March 2, 1943.

Admittedly the cross-petitioners went into possession

and paid all installments of rent as they accrued in 1942. They were paid to Jess N. Elliott who admittedly acted for and on behalf of his wife in collecting them and thereafter delivering them to her. On November 12, 1942, it is undisputed that a written notice exercising the option of renewal of the lease for another year was timely served on the lessors as required in the lease. There was no provision in the lease requiring that the option to purchase must be exercised in any particular form or manner. Therefore, it could be exercised in any appropriate manner while the 1942 lease or the renewal lease for 1943 was in force and effect. The applicable rule is: "No particular form of notice is essential in the absence of a requirement to that effect in the instrument giving the option. It is not even necessary that the notice of acceptance be in writing, * * * ." 35 C. J., Landlord and Tenant, s. 184, p. 1041. See, also, Smith v. Gibson, 25 Neb. 511, 41 N. W. 360.

On February 14, 1943, Erma V. Elliott died. On or about March 1, 1943, the first $100 payment of rent for 1943 was tendered to Jess N. Elliott. When the administrator of her estate was appointed on March 19, 1943, the rental was again immediately tendered to the administrator in cash upon two occasions about a week apart. These tenders were admittedly refused only for the reason that the administrator was uncertain of his status is view of plaintiff's foreclosure action then pending. On the occasion of the second tender, the administrator was told substantially that lessee accepted the option and was ready, willing, and able to fulfill the contract of purchase, as provided in the lease. It will be recalled that thereafter on May 26, 1943, the exercise of that option and tender of performance thereof was repeated in the cross-petition and in open court upon trial of the issues. Further it was repeated and reiterated in writing on January 15, 1944.

On July 1, 1943, the administrator attempted to collect personally the rentals from the lessee for the first time. He was told that she desired to consult her attorney. Thereafter on July 3, 1943, and again on November 1, 1943, when

the administrator attempted to collect rentals, he was told substantially that lessee was ready, willing, and able to perform and pay the balance of the purchase price under the option to purchase already theretofore exercised. However, the administrator refused to perform at any time and took no steps to complete the transaction. As a matter of fact in the meantime, without his participation, a contract was drawn by others in an effort to sell the property to another for $500 less than the option provided for in the lease and lessee was sued by the administrator in the county court to recover rentals accruing under the 1943 lease.

We believe the record discloses that the lessee made every effort possible to pay the rent due in March 1943, which was refused, and in the meantime having properly exercised the option to purchase, both orally and in writing, we conclude that her opportunity to do so without further payments of rent, theretofore refused, was not forfeited. In 35 C. J., Landlord and Tenant, s. 185, p. 1041, it is said: "Where the option to purchase is duly exercised by an election to purchase, the relation of landlord and tenant ceases and that of vendor and purchaser arises, and the lessor cannot, by a breach of a covenant to convey, compel the continuance of the relation of landlord and tenant for the purpose of creating a breach of covenant to pay rent so as to enable him to declare the option forfeited. The possession of the lessee becomes that of owner, and he will be entitled to such other rights as may be said to attach to his character as vendee, in so far as the rights of the parties are not peculiarly controlled by express stipulations in the lease. The lessor is not entitled to rent after the option to purchaser is exercised, unless there is an express stipulation therefor." See, also, Smith v. Gibson, *supra*.

We come finally to the contention of the administrator that the trial court erred in permitting the lessee to have credit upon the purchase price for rentals paid during 1942, in the sum of $300. As stated in 35 C. J., Landlord and Tenant, s. 178, p. 1037: "In point of legal operation each renewed lease is a new lease, and the taking of it operates

as a surrender of the old one. But a renewed lease may be considered as a continuance of the original lease to some intents, that is, for the protection of legal interests carved out of it, which, once created, the law will not permit to be destroyed, * * * ."

Bearing that rule in mind we find that the renewal of the lease in the case at bar simply renewed the option to purchase during 1943, which had not yet been exercised under the 1942 lease. In that regard we find that no legal interests were carved out of the 1942 lease, which the law will not permit to be destroyed, except the right to exercise the option to purchase upon the same terms during the existence of the 1943 lease.

As authoritatively stated: "The mere option to purchase binds only the lessor and must be accepted before a completed and enforceable contract of sale is effected. The option and the acceptance constitute the complete contract. On notice of acceptance the contract becomes bilateral, binding both parties, and vesting equitable title in the lessee, and the option becomes completely merged in the contract of purchase. Thereafter the lessor can neither withdraw the option, nor change the price to be paid." 35 C. J., Landlord and Tenant, s. 184, p. 1041. By analogy thereafter the lessee can neither withdraw the acceptance of the option nor change the price to be paid.

While the option of renewal and the option to purchase contained in the 1942 lease were a part of the same contract and interdependent in some respects, as hereinafter noted, they conferred separate and distinct rights and powers upon the lessee. The first conferred the right to renewal of the lease for the year 1943 upon the same terms and conditions by written notice 60 days prior to March 1, 1943, while the latter conferred the right to terminate it and become the absolute owner of the property by purchase for $4,000, with credit thereon for rentals paid during the year of its acceptance. The latter was not an essential covenant of the 1942 lease as such but an independent option therein, and the failure to exercise it in that term was only a condition

upon which renewal of the lease and option to purchase during the 1943 term could depend.

The option to purchase not having been exercised in 1942, the right to do so upon the terms and conditions therein provided was lost at the expiration of the lease for that year and lost entirely except for renewal of the lease and exercise of the option thereafter in 1943. Clearly, there was not a contract of purchase until after the date upon which the option was accepted by the lessee in 1943. Therefore this court cannot say, in the absence of language clearly indicating a contrary intention, that the acceptance of the option to purchase in 1943 gave lessee the right to relate it back to the 1942 lease and receive credit upon the purchase price for rentals paid thereunder. We conclude that the trial court erred in allowing the defendant lessee credit for $300 rentals paid by her in 1942.

In all other respects the judgment of the trial court is hereby affirmed but it is directed that the court modify its supplemental decree in conformity herewith and require that lessee, Erna Lapidus, return $300 paid to her by the clerk of the district court and award it to the defendant administrator.

AFFIRMED AS MODIFIED.